WILLIAM DORMADY, plaintiff in error, *v.* THE PRESIDENT, DIRECTORS, AND COMPANY OF THE STATE BANK OF ILLINOIS, defendants in error.

*Error to Sangamon.*

In an action by the plaintiff, to recover the contents of notes alleged to have been lost or consumed by fire, it is not competent for him to introduce his own testimony to the jury, to prove their loss, in order to admit secondary evidence of their contents. The proper course is, to present to the Court an affidavit of the loss, and then secondary evidence may be admitted of the contents of the notes or bills.

The English practice, requiring a party to give notice of the loss or destruction of a bill or note, in order to maintain an action to recover its contents, has never been introduced into this country. Such notice is not necessary.

A demurrer to evidence must state facts, and not merely the evidence conducing to prove them. One party cannot insist upon the other party's joining in demurrer, without distinctly admitting, upon the record, every fact and every conclusion, which the evidence given for his adversary, conduced to prove.

Where a party has been compelled to join in demurrer to evidence, and the party demurring has not admitted upon the record, the facts and conclusions, which the evidence tended to prove, the judgment of the Court below, if for the demurrant, will be reversed, and the cause remanded.

THIS was an action of *assumpsit* commenced by the plaintiff in error, against the defendants in error, in the Circuit Court of Sangamon County. The declaration contains three counts ; the first count alleges that the plaintiff, in consideration of six hundred dollars, in money paid to said Bank, received, in exchange, six one hundred dollar bills of said Bank ; and further avers a demand, and refusal to redeem, by said Bank.

The second count avers the receipt, from said Bank, in exchange for so much money paid to said Bank, six bills, of the denomination of one hundred dollars each, being payable at different branches of said Bank, and that the six bills were, on the 6th of June, 1839, (with the exception of very small parts of some of the bills,) destroyed casually by fire ; that the dates, signatures, or branches where payable, cannot be found from said remnants of the said bills. It avers a presentation of said remnants of bills, at the principal Bank, and a demand of payment, or that other bills be issued therefor.

The third count was for money had and received, and for money lent.

The defendants pleaded *non assumpsit.*

At the July term, 1839, of the Sangamon Circuit Court, the Hon. William Thomas presiding, the cause came on for trial. A

jury was empannelled, and the evidence of the plaintiff heard, to which the defendants demurred, as follows:

" Be it remembered, that on the trial of this cause, the plaintiff proved that he had in possession, on the sixth day of June, 1839, six or eight one hundred dollar bank bills, and other bank bills, amounting, in all, to eight hundred or one thousand dollars ; that five or six of the hundred dollar bills were on the State Bank of Illinois, or some of its branches, and two of the one hundred dollar bills were proved to have been on one of the branches, and some of the small notes, amounting to about forty-five dollars, were on the State Bank or its branches ; that this money was in a pocket-book ; that the branch notes were payable at a branch, signed by the president of the State Bank, and countersigned by the cashier, and endorsed on the back by the cashier of the branch, payable to bearer.

" He further proved, that he occupied a house in Springfield, the front room of which was used as a shop, the next room as a bed-room, and the next as a sitting-room, and the last back shed as a kitchen or lumber room.    He further proved, that on the night of the sixth of June, two persons were called to come to Dormady's house, one called by Mrs. Dormady, the other by another person. When they got there, they saw there had been a fire in the north-west corner of the sitting-room ; that the fire had been put out, but the boards were yet warm ; that the fire had burned or scorched the siding or weather-boarding of the room, about four feet high, and from eighteen inches to two feet wide, and some of the floor, which was of loose boards, had been torn up, and that some pieces of a cigar-box were burnt through, which had been under the floor ; that there was a hole burnt through the weather-boarding, (the weather-boarding of the next house being, on that side, the wall of the room,) through which he could have thrust his hand, and that there were two other smaller holes burnt through, one above and one below; that there was a candle stand, which had been scorched on the top, about seven inches long, by three inches wide, and one of the feet burnt partially off; that plaintiff's wife was in her bare feet, bringing in water ; that the plaintiff appeared to be insane, and had something clasped in his hand, which was afterwards seen to be the end of a pocket-book, containing the ends of nine one hundred dollar bank notes, and some smaller notes, six of which ends of notes were proven to be of the same engraving with the ends of the hundred dollar notes, issued by the defendants, and one end of a five dollar note, to be like the engraving of the five dollar note issued by the defendants ; that the ends of the hundred dollar notes were pressed down to the pocket-book smoothly, and the smaller bills, lying on top, not pressed down.

" The plaintiff further proved, that one of the witnesses

picked up, in the room where the fire had been, a small piece of what he took to be burnt leather, and which looked like the corner of a pocket-book, and, on opening it, saw some light ashes, which looked like the ashes of burnt bank paper.

" Plaintiff further proved, that he applied to Col. Mather, president of the Bank, to know whether he would pay the amount of the ends of the notes, or give other bills, and he replied, no.

" It further appeared, from the evidence, that the ends shown as the ends of the notes, were nothing more than the engraving on the ends ; and that there was no part of the number, date, names, or any part of the notes necessary for the notes to be paid at Bank ; but that those ends of the notes might all be taken off, and still have the complete note which would be paid at the Bank.   Plaintiff further proved, that, on the evening of the said sixth of June, the plaintiff took and paid for his passage to St. Louis, in the stage, which was to start next morning.   It was also proved, that he had in his hand the end of the pocket-book, which was burnt at one end, containing the ends of the bills which were also burnt in the same manner as the pocket-book, except, that the small notes on the top were burnt further in, and were crumbled to ashes, which were five dollar notes ; and that, when he opened his hand, there were new ashes in it, and his hand was dirty with ashes, as was the pocket-book also ; further, that the cinders, from the burnt edge of the pocket-book, stuck out, from one eighth to half an inch ; further, that the end of the pocket-book was like the one in which the money was seen in the afternoon of that day, and witness believed it to be the same.

" It was further proved, that two one hundred dollar notes, payable at the branch of the State Bank, were delivered, by the teller of the Bank, at the counter of the Bank, to the plaintiff, by way of an exchange for other notes, on the same day the witness saw the money in the pocket-book ; and also, that plaintiff had previously, on the same day, got from the bank, two one hundred dollar notes on the Bank of Kentucky.   It was also proved, that the floor of the room, where the fire had been, did not reach the wall, by four inches.

" The end of the pocket-book, and the ends of the notes described, were produced in evidence.   It was also proved, the time the witness came in, when the fire was put out, was a quarter past twelve o'clock ; and the said defendants, admitting the truth of the facts, as above proved, and all inferences properly to be drawn from them, say, that the said testimony is not sufficient, in law, to enable said plaintiff to have and maintain his said action, and recover against the said defendants herein, wherefore they pray judgment, &c.

"Logan and Baker, for defendants."

Dormady *v.* State Bank of Illinois.

The plaintiff excepted to the opinion of the Court, requiring him to join in demurrer, and the jury was discharged.

The Court took the case under advisement, and at a subsequent day of the same term, decided the cause, sustaining the demurrer, and rendered judgment against the plaintiff, for costs. (1)

S. Strong and S. A. Douglass, for the plaintiff in error, contended,

First. The Court erred in not receiving the testimony of the plaintiff, of the destruction of the notes, to let in secondary evidence. Jackson, *ex dem.* Livingston *v.* Frier, 16 Johns. 193; Chamberlain *v.* Gorham, 20 Johns. 144.

Secondly. The affidavit of the plaintiff, of the loss of the notes, was properly offered in evidence, to prove notice to defendants of the destruction of the notes; its service on them having been proved, and the averment being a material one. 1 Chit. Plead. 286, title *Notice.*

Thirdly. The Court erred in permitting the defendants to demur to the testimony, without admitting the fact of the destruction of the bills, which the evidence conduced to prove. 2 Henry Blackstone 205; 2 Tidd's Practice 791–794; 3 Blac. Com. 372; 1 Phillips' Ev. 235–237, and note.

Fourthly. The Court erred in compelling the plaintiff to join in demurrer, as the matter of fact was not admitted, and was therefore for the jury to decide, as the only matter in controversy between the parties. See same authority last above recited, and also, 4 American Com. Law 342, 343, note, 344, § 1–6.

Fifthly. The judgment of the Court is erroneous, in that the whole evidence would legally warrant a jury in finding a verdict for the plaintiff, and therefore proves the issue; and that the plaintiff was entitled to recover $645, and interest from 8th June, 1839, the time of demand of payment. And for that the Court ought now to enter up judgment. 2 Tidd's Practice 794.

S. T. Logan, for the defendants in error.

Smith, Justice, delivered the opinion of the Court:

This was an action of *assumpsit* brought to recover the amount of certain notes of the Bank, of which the plaintiff was possessed, alleged to have been casually destroyed by fire, while he was the owner thereof. The case is brought to this Court by writ of error. The questions presented for consideration here, arise out of exceptions taken to the opinion of the Circuit Court, on the offer to introduce certain testimony, by the plaintiff, which was rejected by the Court, and such as arise on a demurrer to evidence.

This is the first time any question has arisen in this Court on a demurrer to evidence; and it may, therefore, be necessary to be

(1) The other facts in the case appear in the opinion of the Court.

more minute in the examination bestowed on the case, than if such questions had been heretofore considered.

Its origin and early use in courts of justice we will not attempt to trace.; because it would, perhaps, be of no particular use in the determination of the questions under consideration.

It is said the practice has, on many occasions, been much misunderstood ; and that courts will be extremely liberal in inferences where the party, by demurring, takes the question from the proper tribunal ; and that it is a course of practice, generally speaking, not calculated to promote the ends of justice, and is liable to much abuse. (1)   As early as the time of Mr. Justice Blackstone, it had, in a great measure, been disused, because of the more frequent exercise of the discretionary powers of the courts, in granting new trials.   If by a demurrer to evidence, it is understood to be its sole object to refer to the court the decision of the law arising on the facts, those facts being already admitted and clearly ascertained, and nothing remaining but for the court to apply the law, as in an agreed case, then we see no strong objection to the practice ; but such certainly has not always been the case, for it seems to have been frequently much misunderstood, and to have been attempted to be greatly extended beyond such a rule.

Having premised thus much, the questions arising out of the demurrer and exceptions taken during the progress of the cause will be examined.

At the trial below upon the general issue, the plaintiff, after having by evidence established his possession of the bank bills, on the afternoon of the day of the alleged destruction of the bills by fire, offered to introduce his own testimony to prove the destruction and loss, for the purpose of admitting secondary evidence, by parol, of their contents.

The Court decided that he could not testify to the Court, but that his affidavit of the destruction of the bills might be made, and delivered to the Court.   This decision being excepted to by the plaintiff, the defendants waived the necessity of proof of loss of the notes, and thereupon the plaintiff was permitted to prove the contents of such notes or bills.   The plaintiff also offered to prove notice to the defendants of the destruction and loss of the bank notes, but the Court refused to admit the evidence of notice, deciding that the evidence was irrelevant ; the averment of loss, contained in the declaration, not being a material averment, and therefore not necessary to be proved.

It also appears, that the plaintiff refused to join in demurrer, because, as the record states, the defendants did not admit, on the record, the facts which the evidence conduced to prove, to wit, that the six one hundred dollar bills, and one five dollar bill, were the bills made by the defendants, and were issued by the defendants to the plaintiff, by way of exchange ; and also that the remainder of .

(1) 6 Peters' Cond. R. 262.

the bills, the remnants of which were produced in evidence, were destroyed by fire casually. The Court, however, compelled the plaintiff to join in demurrer, deciding that not any thing could be stated, except the evidence; and that no fact, which the evidence conduced to prove, or which the jury might find, was to be stated on the record. Upon an examination of the case, it will be readily perceived, that the defendants have demurred to evidence of facts, not to facts themselves. What was the point in controversy? Not the possession of the notes, for which the plaintiff sought to recover the amount; for that was not only clearly established by evidence, but admitted by a waiver of the necessity of the proof of the loss and destruction of them. The main fact in controversy, was the contents of the notes destroyed, which embraced the description and amount.

Now nothing is more clear, than that the evidence of the facts deposed to by the witnesses, conduced materially to prove and establish the main facts in controversy.

The defendant has not admitted, by his demurrer, those facts, which the evidence so conduced to prove, and asked the judgment of the Court on the law arising thereon; that is, whether the plain-- tiff, on such admissions by the demurrer, that the notes were notes of the Bank, and amounted to the sum contended for, taken in connexion with the other evidence in the cause of ownership, is entitled to recover; but he has sought the judgment of the Court on the testimony whether it proved the notes destroyed, were those alleged to have been destroyed casually by fire; and whether they amounted to the sum claimed. Thus seeking to compel the Court to perform not its appropriate function, but that of the jury, the questions being purely matters of fact.

We thus see that the counsel for the defendants have mistaken the office of a demurrer to evidence. It is stated by elementary writers, and will be found to be distinctly asserted in books of practice, that where the evidence offered consists only of a record or other matter in writing, the adverse party may insist on demurring to the evidence, and the party offering it, must either join in demurrer, or waive the evidence; and the reason is, that there cannot be any variance of matter in writing; so where the evidence is by parol, it has been said, that if it be certain and determinate, the party may demur and oblige his adversary to join in demurrer.

Where, however, it is loose, indeterminate, and circumstantial, it is otherwise. In such cases the party offering the evidence will not be compelled to join in demurrer, unless the demurrant admits the evidence of the fact; or where it is circumstantial, unless he distinctly admits upon the record, every fact and every conclusion which the evidence conduces to prove. He may, however, join in the demurrer, and then every fact is to be considered as admitted, which the jury could infer in his favor, from the evidence demurred

to. (1)   It is thus seen that the Court erred in its opinion of the law of demurrer to evidence, and its power to compel a joinder to a demurrer.   In order, however, to show more clearly, if possible, the true principles applicable to a case like the present, it will be proper to quote freely from an opinion of the Supreme Court of the United States, delivered by Mr. Justice Story, in which the rules are most clearly and explicitly laid down.   In the case of Fowle v. The Common Council of Alexandria, (2) which was an action originally brought in the Circuit Court sitting at Alexandria, in the District of Columbia, to recover damages asserted to have been sustained by the plaintiff, in consequence of the neglect of the defendants to take due bonds and security from one Marsteller, licensed by them as an auctioneer, according to the provisions of a statute requiring such bonds and security, the Court held, that no issue could be joined upon a demurrer to evidence, so long as there was any matter of fact in controversy between the parties.

The demurrer to evidence must state facts, and not merely the evidence conducing to prove them.   One party cannot insist upon the other party's joining in demurrer, without distinctly admitting upon the record, every fact and every conclusion which the evidence given for his adversary, conduced to prove.   The Court say, in this case, " that it is no part of the object of such proceedings to bring before the Court an investigation of the facts in dispute, or to weigh the force of testimony, or the presumptions arising from the evidence ; that is the proper province of the jury.   The true and proper object of such a demurrer, is to refer to the Court the law arising from the facts.   It supposes, therefore, the facts to be admitted, and ascertained, and that nothing remains but for the Court to apply the law to those facts.   This doctrine is clearly established by authorities, and is expounded in a very able manner by Lord Chief Justice Eyre, in delivering the opinion of all the judges in the case of Gibson v. Hunter, before the House of Lords.   It was there held, that no party could insist upon the other party's joining in demurrer, without distinctly admitting on the record, every fact and every conclusion which the evidence given for his adversary, conduced to prove.   If, therefore, parol evidence is given in the case, which is loose and indeterminate, and may be applied with more or less effect to the jury, or evidence of circumstances which is meant to operate beyond the proof of the existence of those circumstances, and to conduce to the proof of other facts, the party demurring must admit the facts of which the evidence is so loose, indeterminate, and circumstantial, before the Court can compel the other side to join therein.   And if there should be such a joinder, without such admission, leaving the facts unsettled and indeterminate, it is a sufficient reason for refusing judgment upon the demurrer, and the judgment, if any, is liable to be reversed for error.

(1) 2 Tuck. Com. 296; 2 Tidd's Pract. 793, 794; 2 H. Black. 187.   (2) Peters.

Indeed the case made for a demurrer to evidence, is in many respects like a special verdict. It is to state facts, and not merely testimony which may conduce to prove them. It is to admit whatever the jury may reasonably infer from the evidence, and not merely the circumstances which form a ground of presumption.

The principal difference between them, is that upon a demurrer to evidence, a court may infer in favor of the party joining in demurrer, every fact of which the evidence might justify an inference; whereas, upon a special verdict, nothing is intended beyond the facts found. Upon an examination of the case at bar, it will be at once perceived that the demurrer to evidence tried by the principles stated, is fatally defective. The defendants have demurred not to facts, but to evidence of facts ; not to positive admissions, but to mere circumstances of presumption, introduced on the other side. The plaintiff endeavored to prove by circumstantial evidence, that the defendants granted a license to Marsteller, as an auctioneer. The defendants not only did not admit the existence of such a license, but they introduced testimony to disprove the fact: even if the demurrer could be considered as being exclusively taken to the plaintiff's evidence, it ought not to have been allowed without a distinct admission of the facts which that evidence conduced to prove. But when the demurrer was so framed as to let in the defendant's evidence, and thus to rebut what the other aimed to establish, and to overthrow the presumptions arising therefrom, by counter presumptions, it was the duty of the Circuit Court to overrule the demurrer, as incorrect and untenable in principle.

"The question referred by it to the Circuit Court, was not a question of law but of fact.

"This being the posture of the case, the next consideration is, what is the proper duty of this Court sitting in error. It is undoubtedly to reverse the judgment, and award a *venire facias de novo*. We may say, as was said by the judges in Gibson *v.* Hunter, that the demurrer has been so incautiously framed, that there is no manner of certainty in the state of facts upon which any judgment can be founded. Under such a predicament, the settled practice is to award a new trial upon the ground that the issue between the parties in effect, has not been tried."

The case under consideration, and that upon which the preceding opinion was given, are so similar in the character of the demurrer, and kind of proof offered, with the exception that the former does not embrace any evidence on the part of the defendant, that it may well be considered, as to the demurrer, identical with that case; and if that Court had anticipated the present case, the reasons and authority upon which its judgment is based, could not have been more apposite. . The whole train of reasoning is directly applicable to the case at bar, and decides the question presented by the demurrer. The demurrer is clearly vicious and irregular, and the necessity is

felt of insisting upon a rigid conformity to the principles regulating this practice as expounded by the Supreme Court of the Union.

As the case requires to be remanded, and a *venire facias de novo* must be awarded, it is proper to settle the rule in relation to the preliminary proof of loss. The practice of admitting the oath of the party as evidence of loss of the paper, arises from the necessity of the case. The admission of the testimony was not made a question on the trial of the cause, but the manner of receiving the proof seems to have been the question raised. The rule seems to be well settled, that this proof is not evidence in the cause.

It is not to go to the jury, but is addressed to the Court for the purpose of establishing the right of the party to the admission of secondary evidence to prove the contents of the paper lost.

The doctrine on this part of the case, is ably and minutely reviewed in the case of Taylor *v.* Riggs, (1) by Chief Justice Marshall, and established the rule to be as stated.

The Circuit Court was therefore correct in its decision in requiring the plaintiff to depose in writing to the loss of the notes. No error is perceived in the rejection of the evidence offered to prove notice of the loss and destruction of the notes. The English practice on this subject has not been introduced into this country ; and a party may recover without a special count on a lost note.

This decision proceeds upon the recognition of the immateriality of notice of the loss, and upon that principle the Circuit Court did not err in the rejection of the proof of notice.

It has been urged, in the argument, that as the Circuit Court compelled the plaintiff to join in the demurrer to the evidence, that this Court ought to consider all the facts which the plaintiff's evidence conduced to prove, as established, and render judgment for the amount claimed in this Court.

The reasons advanced in support of this position, are not considered sound, nor has any adjudged case been produced to support the ground assumed.

It has been already said that the defendants have demurred to evidence of facts, and not to facts themselves, and to presumptions arising from circumstances.

That the duty of the Court is, to decide the law arising on these facts, and not to ascertain what the facts are. Should this Court undertake to determine, from the evidence, whether that evidence supports, with reasonable certainty, the fact that the notes alleged to have been destroyed, were destroyed, and were the notes for which the plaintiff has sought to recover the value, and what was the contents of them, and whether demand of payment had been made, it would be deciding a question purely of fact, not of law applicable to the facts. This Court has no authority to determine matters of fact, nor can it appropriately say, what shall be con-

(1) 1 Peters 591.

sidered as admitted, because the Circuit Court has compelled the plaintiff to join in demurrer.

In the case of Fowle v. Common Council of Alexandria, the rule is laid down to be "that if there should be a joinder, without the admission required, leaving the facts unsettled, and indeterminate, it is a sufficient reason, for refusing the judgment on the demurrer, and the judgment if any is rendered, is liable to be reversed for error."

The authority referred to in 2 Tidd's Practice 794, does not support the practice to render judgment for the plaintiff on the merits, in a case like the present. Let the judgment of the Circuit Court of Sangamon county be reversed with costs, the cause remanded, and the Circuit Court directed to award a *venire facias de novo*.

*Judgment reversed.*

*Note.* See McCreary v. Fike, 2 Blackf. 374; Doe, *ex dem.* Wilkins v. Rue *et al*, 4 Blackf. 263.