A. MINER WELLMAN, EXr.

*v.*

SARAH W. MINER *et al.*

*Opinion filed April 17, 1899.*

1. LIMITATIONS—*section 19 of Limitation act construed.* Section 19 of the Limitation act, (Rev. Stat. 1874, p. 676,) providing that if the person against whom an action may be brought dies within the limitation period the action may be brought against his personal representatives after the expiration of such period and within a year from the granting of letters, applies to a bill to foreclose a mortgage against the widow and heirs of the deceased, as well as to a suit on the note against the personal representative.

2. SAME—*uncorroborated endorsement in the payee's hand does not toll statute.* An endorsement of a partial payment on a note in the handwriting of the payee is not, of itself and uncorroborated, sufficient evidence to overcome the defense that the Statute of Limitations has run against the note.

3. SAME—*what sufficient corroborative evidence of payment.* Proof that the endorsement of a partial payment on a note in the payee's handwriting was made on the same day that he received, in due course of mail. a draft for the amount, purchased and endorsed by the maker, is sufficient to give the endorsement the force of evidence showing a payment.

4. SAME—*effect of acceptance of release as to its tolling the statute.* The acceptance and recording by a mortgagor of a release of part of the mortgaged property, which recites that the mortgagee holds "the residue of said mortgaged lots as security for the money remaining unpaid on said mortgage," does not toll the Statute of Limitations, as being a written acknowledgment of the indebtedness which the mortgagor is estopped to deny.

5. PAYMENTS—*creditor may apply payment on oldest debt, in absence of direction.* One holding several notes of the same party, bearing different dates, may apply a payment upon the oldest note, in the absence of any direction from the debtor other than to apply the payment on his indebtedness.

*Wellman* v. *Miner,* 73 Ill. App. 448, reversed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

This is a bill, filed on October 13, 1894, by the appel-
lant, A. Miner Wellman, executor of the will of Asher W.
Miner, deceased, of Allegany county, New York, against
the appellees, the widow and children of Simon G. Miner,
deceased, for the purpose of foreclosing three mortgages,
executed by Simon G. Miner in his lifetime to Asher W.
Miner.    The first mortgage was given to secure a note
dated June 1, 1866, for $2500.00, executed by Simon G.
Miner, payable to the order of Asher W. Miner three years
after date, with interest at the rate of seven per cent per
annum.  The note of June 1, 1866, was due on June 1, 1869.
On September 1, 1883, the interest upon the note was by
Asher W. Miner reduced to six per cent per annum from
that date.    The second mortgage was given to secure a
note dated February 25, 1867, for $1153.55, executed by
Simon G. Miner, payable three years after date, that is
to say, on February 25, 1870, with interest at seven per
cent per annum, which interest was reduced on Septem-
ber 1, 1883, to six per cent.  The third mortgage was given
to secure a note for $5981.66, dated July 9, 1873, executed
by Simon G. Miner, payable to the order of Asher W.
Miner one year after date, that is to say, on July 9, 1874,
with interest at seven per cent per annum, which in-
terest was reduced to six per cent on September 1, 1883.
The property conveyed by the three mortgages was the
equal undivided one-half of a certain business building
in the city of Bloomington; but, in addition to said undi-
vided one-half of said business building, the third mort-
gage, securing the note for $5981.66, covered also three
residence lots in the city of Bloomington.  Said three resi-
dence lots were not covered by the first and second mort-
gages.    The note for $2500.00, dated June 1, 1866, shows
endorsements of payments upon the back thereof amount-
ing to $3037.25, the date of the first payment being June 1,
1867, and the date of the last payment being January 2,
1884.    The second note for $1153.55, dated February 25,
1867, shows endorsements thereon of payments to the

amount of $1699.47, the date of the first payment being February 25, 1868, and of the last payment April 17, 1886. The third note for $5981.66, dated July 9, 1873, shows endorsements on its back of payments to the amount of $6177.46, the date of the first payment being June 7, 1875, and the date of the last payment being September 1, 1883. The total principal of the three notes is $9635.21, and, according to the averments of the bill, $10,914.18, being $1300.00 more than the principal, was paid upon the notes.

Asher W. Miner, the payee in the notes, and Simon G. Miner, the maker thereof, were brothers. Asher W. Miner lived at Friendship in the State of New York. Simon G. Miner lived at Bloomington in Illinois. The notes were given for loans of money made by Asher to Simon at the respective dates thereof. Asher W. Miner died testate on May 30, 1892, in Friendship, New York, aged seventy-six years. Simon G. Miner, who was a Baptist minister, died testate in Bloomington, Illinois, on December 23, 1893, at the age of eighty-six years. Letters testamentary were issued on the estate of Simon G. Miner on January 6, 1894.

The bill alleges that, within ten years before the filing of it, Simon G. Miner made part payments on two of the notes, to-wit, the note for $2500.00 and the note for $1153.55; that, as to the third note for $5981.66, Simon G. Miner, within ten years before the bill was filed, acknowledged said indebtedness and renewed his promise to pay the same; and that these part payments, and acknowledgments of the indebtedness, and promise to pay the same, removed the bar of the Statute of Limitations. The answer of the defendants, which was not sworn to, denied that, within ten years before the filing of the bill, Simon G. Miner made any payments on either of the notes; or that Simon G. Miner came to an accounting upon either of the notes; or that he promised in writing to pay the amount unpaid on said notes. The defendants pleaded the Statute of Limitations, and denied all averments of payment or new promises in writing within ten

years, and claimed that all right of action was barred before the bill was filed. A general replication was filed to the answers, and the cause was referred to a master in chancery to take proofs and report the same with his conclusions and findings. The master made a report finding for the defendants, and that the notes and mortgages were barred by the Statute of Limitations. The court confirmed the report of the master, and entered a decree dismissing the bill. An appeal was taken from this decree to the Appellate Court; and the Appellate Court has affirmed the judgment of the circuit court. The present appeal is prosecuted from such judgment of affirmance.

CALVIN RAYBURN, and OWEN T. REEVES, for appellant:

If an action at law could have been commenced on this note against the executrix of S. G. Miner at the time the bill was filed herein, then the Statute of Limitations had not run against the right to foreclose the mortgage given to secure the note, as the limitation would not be complete until the debt was barred. *Roberts* v. *Tunnell*, 165 Ill. 631; *McMillan* v. *McCormick*, 117 id. 79; *Schifferstein* v. *Allison*, 123 id. 662.

The executrix of S. G. Miner was not a necessary party to the bill, which sought nothing but a foreclosure of the mortgage, and did not seek to charge the executrix or the personal estate in her hands. The executrix was not a necessary party to the bill to foreclose, and as long as the debt was alive and action could be maintained at law on the note appellant could foreclose the mortgage. Story's Eq. Pl. sec. 196; *Roberts* v. *Tunnell*, 165 Ill. 631.

The execution of a release of part of the mortgaged lots from the mortgage given to secure the note, in which release it is recited that the mortgagee is to hold the residue of the property included in the mortgage as security for the money remaining unpaid on said mortgage, and the acceptance of such release by the mortgagor and

the recording of the same, are such recognition of the indebtedness in writing as keeps it alive for ten years from the date of the acceptance of the release. *Palmer* v. *Butler*, 36 Iowa, 576; *Byrne* v. *Morehouse*, 22 Ill. 603; *Riggs* v. *Cook*, 4 Gilm. 336; *Cobb* v. *Oldfield*, 151 Ill. 540; *Orthwein* v. *Thomas*, 127 id. 554; *Guilfoil* v. *Arthur*, 158 id. 607; *Pinckard* v. *Milmine*, 76 id. 453; *Kennedy* v. *Brown*, 61 Ala. 296; *Johnson* v. *Thompson*, 129 Mass. 398; *Carver* v. *Jackson*, 4 Pet. 83; *Crane* v. *Morris*, 6 id. 611; *Bell* v. *Todd*, 51 Mich. 21.

Lillard & Williams, (Edwin H. Miner, of counsel,) for appellees:

The Statute of Limitations is a statute of repose, passed on considerations of public policy for the general good of society. After the lapse of the statutory period the debt is conclusively presumed to be paid. *Neustacher* v. *Schmidt*, 25 Ill. App. 631.

Section 19 of the Limitation act, adding a year to the period of limitation after the issuance of letters, when an executor or administrator is sued, does not apply when only the heirs, as in this case, and not the personal representatives, are sued. 2 Starr & Curtis' Stat. chap. 83, sec. 19; *Tilton* v. *Yount*, 28 Ill. App. 580; *Roberts* v. *Tunnell*, 65 id. 191; 165 Ill. 631; *Slaughter* v. *Foust*, 4 Blackf. 379; *Jennings* v. *Love*, 24 Miss. 249.

Endorsements of credits on the back of the notes by and in the handwriting of the payee are incompetent as evidence and furnish no proof of payment. *Drury* v. *Henderson*, 36 Ill. App. 521; 143 Ill. 318; *Lowery* v. *Gear*, 32 id. 383; *Connelly* v. *Pierson*, 4 Gilm. 108; *Kallenbach* v. *Dickinson*, 100 Ill. 434; *Roseboom* v. *Billington*, 17 Johns. 182.

In order for a payment to have the effect of arresting the running of the limitation statute where there is more than one note or debt, the one to be so affected must be specified, or, to so affect all, all must be so specified by the debtor making such payment, otherwise none are affected,—*i. e.*, the bar of limitation is not arrested as to

any of them. There must be an actual affirmative inten-
tion to make a payment on a specific note or notes, or no
new promise is implied as to all or any one of them. *Kal-
lenbach* v. *Dickinson*, 100 Ill. 444; *Lowery* v. *Gear*, 32 id. 386;
*Drury* v. *Henderson*, 36 Ill. App. 524; *Carroll* v. *Forsyth*, 69
Ill. 133; *Drury* v. *Henderson*, 143 id. 318; *Miller* v. *Cinnamon*,
168 id. 455; *Patterson* v. *Newre*, 165 Pa. St. 72; *Buckingham*
v. *Smith*, 23 Conn. 455; *Walker* v. *Griggs*, 32 Ga. 119; *Landis*
v. *Roth*, 109 Pa. St. 621; *Smith* v. *Moulton*, 12 Minn. 352.

Mr. JUSTICE MAGRUDER delivered the opinion of the
court:

The first two notes, one dated June 1, 1866, for $2500.00,
and the other, dated February 25, 1867, for $1153.55, were
given when the Statute of Limitations, barring a note in
sixteen years, was in force. But the present Statute of
Limitations, barring a note in ten years after the accru-
ing of the cause of action thereon, was passed and became
operative in 1872. So far as any payments, made after
the enactment of the statute of 1872, had the effect of
renewing the debt, such renewals are governed by the
statute of 1872. (*Drury* v. *Henderson*, 143 Ill. 315). It is
conceded, that three payments were made on September
1, 1883, one on each of the three notes here in contro-
versy, and that, by virtue of such payments, each of said
notes was renewed up to September 1, 1893.

*First*—It is claimed by appellant, that the note for
$2500.00, dated June 1, 1866, is not barred by the Statute
of Limitations because of a payment of $150.00 endorsed
thereon on January 2, 1884. By this payment the note
for $2500.00 is claimed to have been renewed, and its
binding force to have been extended to January 2, 1894.

Even if there was such a payment on January 2, 1884,
by Simon G. Miner as operated to take the note out of
the Statute of Limitations, yet the renewal of the note
would not be extended beyond January 2, 1894; and, in-
asmuch as the bill in this case was not filed until October

13, 1894, the payment would not be sufficient as a defense. In order to obviate this difficulty the appellant relies upon section 19 of the Limitation law of this State. The last sentence of said section is as follows: "If a person, against whom an action may be brought, die before the expiration of the time limited for the commencement thereof, and the cause of action survives, an action may be commenced against his executors or administrators after the expiration of that time, and within one year after the issuing of letters testamentary or of administration." (2 Starr & Curt. Ann. Stat.—2d ed.—p. 2639). The contention of the appellant is, that the payment of January 2, 1884, extended the life of the note for $2500.00 to January 2, 1894; that, as the bar of the statute on this note was not complete at the time of the death of Simon G. Miner which occurred on December 23, 1893, said section 19 gave the appellant one year from the appointment of an executor of the estate of Simon G. Miner to commence this suit; that, as such executor was appointed on January 6, 1894, appellant would have until January 6, 1895, to file a bill to foreclose; and that this bill, having been filed on October 13, 1894, was filed in due time.

It is conceded by both parties, as has heretofore been stated, that the limitation upon the note was extended to September 1, 1893. If, therefore, the payment, alleged to have been made on January 2, 1884, cannot be regarded as a new promise to pay the note, so as to take it out of the statute, section 19 can have no application to the present case, because Simon G. Miner died on December 23, 1893, after the debt was barred, and after the expiration of the time limited for the commencement of an action upon the debt. Section 19 only applies where the person, against whom an action may be brought, dies before the expiration of the time limited for the commencement thereof.

If, however, the payment made on January 2, 1884, be regarded as such a payment as amounted to a new

promise to pay the debt, then the limitation was extended to January 2, 1894, and the provision of section 19, as quoted, is applicable to the present case, because Simon G. Miner died on December 23, 1893, before the expiration of the time limited for the commencement of the action, that is to say, before January 2, 1894. In that event the cause of action survived, and an action could be commenced within a year after January 6, 1894, the date of the issuing of letters testamentary to the appellant. It is said by the appellees, that the additional year after issuing letters testamentary, allowed by section 19 for commencing suit against an executor or administrator, does not apply to this case, because the executor is not a party, but only the widow and heirs of Simon G. Miner in their private characters are defendants. This contention is disposed of by the recent case of *Roberts* v. *Tunnell,* 165 Ill. 631. This being a bill to foreclose mortgages, the executor or administrator of the deceased mortgagor is not a necessary party to the bill. The bill does not seek to charge the executor or administrator or the personal estate in his hands. If the payment of January 2, 1884, operated to extend the limitation to January 2, 1894, then, on October 13, 1894, when this bill was filed, an action at law could have been brought by the appellant upon the note for $2500.00, or that note could have been proved against the estate in the county court, in either of which cases the Statute of Limitations could not have been pleaded with success by reason of the provision in said section 19. The mortgage being but an incident to the debt secured by it, the period of limitation would not expire until the debt was barred. As was said in *Roberts* v. *Tunnell, supra:* "As long as the debt was alive and an action could be maintained at law on the note appellee (appellant) could foreclose the mortgage to enforce her (his) security."

The material question, therefore, is whether or not the payment of January 2, 1884, was such a payment as

amounted to an acknowledgment of the debt and a new promise to pay the debt so as to extend the limitation for ten years from that date. The endorsement of the $150.00, as having been paid on January 2, 1884, was made in the handwriting of Asher W. Miner, the payee in the note and the creditor of Simon G. Miner. The endorsement of a payment upon a note in the handwriting of the payee thereof is incompetent as evidence of payment to stop the running of the Statute of Limitations. After a note is barred by the statute, the endorsement of a payment thereon by the payee is in his own interest, because it keeps the debt alive. Declarations by a party in his own favor can never be admitted in evidence. If the payee's declaration that he had received a partial payment is inadmissible as evidence, equally so is his written acknowledgment of such payment. In *Connelly* v. *Pierson*, 4 Gilm. 108, this court said: "An endorsement of a partial payment on a note, made by the holder without the privity of the maker, is not, of itself and uncorroborated, sufficient evidence of payment to repel a defense created by the Statute of Limitations." (*Roseboom* v. *Billington*, 17 Johns. 182; *Lowery* v. *Gear*, 32 Ill. 383; *Kallenbach* v. *Dickinson*, 100 id. 427; *Drury* v. *Henderson*, 143 id. 315; 36 Ill. App. 521; *Treadway* v. *Treadway*, 5 id. 478; *Mills* v. *Davis*, 113 N. Y. 243).

While, however, it is not seriously disputed by the appellant that the endorsement of the payment of January 2, 1884, in the handwriting of Asher W. Miner cannot by itself be regarded as proof of such payment so as to prevent the operation of the Statute of Limitations, yet it is claimed that such endorsement, when corroborated by other circumstances, and when made with the privity of the maker of the note, is sufficient proof of such payment. What then are the circumstances relied upon to corroborate the endorsement in question? The proof shows that, on December 31, 1883, Simon G. Miner purchased a draft drawn by the National State Bank of

Bloomington upon the United States Bank of New York for $150.00, the date of the draft being the date of its purchase, to-wit, December 31, 1883. The evidence of the purchase of this draft by Simon G. Miner consists of entries made in the books of the National State Bank of Bloomington. Entries upon the books of the First National Bank of Friendship, New York, where Asher W. Miner lived, show that, on January 2, 1884, said draft, dated December 31, 1883, as above described, was paid to Asher W. Miner, and that there were endorsed upon it the names of Simon G. Miner and Asher W. Miner. The endorsement in the handwriting of Asher W. Miner of the payment on the note bears the same date, as the date of the payment of the draft to him, as shown by the books of the bank at Friendship. The evidence does not show any direction from Simon G. Miner to his brother, Asher W. Miner, as to how the draft for $150.00 should be applied. It does, however, appear that, on December 31, 1883, Simon G. Miner purchased of a bank in Bloomington a draft for $150.00 on a New York bank, payable to his own order, which he endorsed and sent to his brother at Friendship in New York; that Asher W. Miner received that draft two days after it was purchased by his brother, Simon, and collected it, and endorsed the amount so collected upon the note for $2500.00 on the same day on which he made the collection. The fact, that the endorsement of the payment on the note was made on the same day, on which, in due course of mail, Asher W. Miner received the money from his brother, is strong corroborative evidence that what was contained in the endorsement upon the note was true. If there was no other evidence of payment than the endorsement thereof upon the back of the note in the handwriting of Asher W. Miner, such endorsement could not be accepted as evidence of a payment in favor of Asher W. Miner; but the proof shows clearly, that the amount, endorsed as paid on January 2, 1884, was actually paid to Asher W.

Miner by his brother on that date. The fact of an actual payment having been made to the creditor by the debtor concurs with the fact of an endorsement on the note made by the creditor at the very time of the payment. This we regard as such evidence of payment, as stops the running of the statute. As there was no direction to apply the $150.00 upon any particular one of the notes, Asher W. Miner had the right to apply it upon the oldest note, and this he did.

We are, therefore, of the opinion that the defense of the Statute of Limitations was not successfully made to the note for $2500.00.

*Second*—The last payment, endorsed upon the second note, dated February 25, 1867, for $1153.55, is in the handwriting of Asher W. Miner, and is as follows: "$474.50 rec. Apl. 17, '86, in dft. to apply on within." It is claimed by the appellant, that the payment thus endorsed extended the limitation to April 17, 1896. The same objection exists to the endorsement standing alone, as has already been mentioned in connection with the endorsement of $150.00 on the note for $2500.00. In other words, the endorsement being in the handwriting of the payee of the note, and being made in his own interest, can not, standing alone, be such evidence of a payment, as amounts to a renewal of the debt. But the evidence develops corroborating circumstances in connection with the endorsement, which substantiate the truth thereof, and show that a payment of the amount endorsed was actually made at that date. What are the corroborating circumstances thus referred to? By a release dated July 11, 1884, Asher W. Miner released from the mortgage, securing the note for $5981.66, the three residence lots embraced in that mortgage. The testimony of E. H. Miner, a son of Simon G. Miner, shows, that this release was executed for the purpose of enabling Simon G. Miner to sell the lots. E. H. Miner also states, that his father, Simon G. Miner, sent Asher W. Miner the money realized

from the sale of these lots.   On April 14, 1886, Simon G. Miner sold one of the lots so released for $475.00.  On the same day he remitted to his brother $474.50, being the total proceeds of the sale of the lot, less the exchange.  On that day, April 14, 1886, he wrote to his brother, Asher W. Miner, the following letter enclosing the money: "Please find enclosed drft. on New York for four hundred and seventy-four dollars & 50 cts. ($474 50-100). I sold one of the lots on East Douglas street this morning for cash. I send you the avails as specified in my last letter to you, less the exchange, 50 cts.   Please credit to my account. I am glad to be able to sell so soon for a good price on such terms, and make this payment on my indebtedness to you, as it gratifies me to so soon make slight amends to you for your many kindnesses to me and mine." It also appears from entries in the books of the National State Bank at Bloomington, that, on April 14, 1886, a draft was drawn by that bank on the American Exchange Bank of New York for $474.50, purchased by E. H. Miner, son of Simon G. Miner.   Entries upon the books of the First National Bank of Friendship, New York, show that this draft, endorsed by E. H. Miner and Asher W. Miner, was paid to Asher W. Miner on April 17, 1886, three days after it was remitted to Asher W. Miner by Simon G. Miner. The endorsement of $474.50 upon the note for $1153.55 as paid on April 17, 1886, was made on the same day, on which Asher W. Miner received the money sent to him from Bloomington.   The circumstances above detailed establish to our satisfaction the making of the payment of $474.50 at the date and in the manner stated in the endorsement on the note.   It is true, that Simon G. Miner did not give any direction in his letter of April 14, 1886, as to the particular note upon which the payment was to be applied.   But he specifically states that he makes the payment upon his indebtedness to Asher W. Miner, thus leaving it to Asher W. Miner to apply it upon the indebtedness in such way as he saw fit.   As matter of fact

179—22

he applied it upon the note next in age to the note, upon which the last remittance of $150.00 had been applied.

We are, therefore, of the opinion, that the payment made on April 17, 1886, upon the note for $1153.55, amounted to a renewal of the note up to April 17, 1896. Therefore, the Statute of Limitations was unavailing as a defense against this note.

*Third*—It is claimed by the appellant, that the release of the mortgage of the residence lots, executed by Asher W. Miner to Simon G. Miner on July 11, 1884, amounted to such an acknowledgment of the debt, as stopped the running of the statute as against the note for $5981.66. There is no endorsement of payment upon the note for $5981.66 later in date than September 1, 1883. It is, however, contended by appellant, that the release deed, dated July 11, 1884, extended the limitation to July 11, 1894; and that by reason of the provision contained in section 19 of the Limitation act, as above discussed, appellant had a year from January 6, 1894, within which to file the present bill for the reasons already stated in construing the meaning of said section 19. We are unable to see how the release deed operated as an acknowledgment of the indebtedness on the part of Simon G. Miner, or as constituting a new promise by him to pay the balance of the debt. Appellant says that the release deed was accepted by Simon G. Miner, and that, having accepted it, he was bound by the recitals contained in it. The doctrine of estoppel by the recitals in a deed is well established; and a party, claiming under such deed, cannot be permitted to deny any fact admitted to exist by such recitals. (*Orthwein* v. *Thomas*, 127 Ill. 554). The instrument here in question, however, is not a deed, but a mere release of certain lots from a mortgage. It is not executed by Simon G. Miner, but by Asher W. Miner. The release recites, that Asher W. Miner "has agreed to give up and surrender the lots hereinafter described, * * * and to hold and to claim the residue of said mortgaged lots as security for

the money remaining unpaid on said mortgage." Counsel say that, by accepting the release-with these words in it, Simon G. Miner acknowledged that money remained unpaid on the mortgage. The agreement to hold the residue of the mortgaged lots as security for the money remaining unpaid is an agreement made by the mortgagee, Asher W. Miner, and not an agreement made by the mortgagor, Simon G. Miner. This release in this respect is unlike the class of deeds, referred to in such cases as *Thompson* v. *Dearborn*, 107 Ill. 87. Where a mortgagor executes a deed of land subject to a mortgage to a third person, and puts in it a clause to the effect that the grantee in the deed assumes and agrees to pay such mortgage, the grantee, accepting the deed and holding under it, is bound to pay the mortgage so assumed. But, there, the covenant to assume the mortgage is a covenant by the grantee who accepts the deed. If there is any covenant here, it is not a covenant by the grantee to whom the release is executed, but a covenant by the grantor making the release. Nor is there any admission contained in the release that the amount remaining unpaid on the mortgage is due from the grantee. The release contains no recital, that the mortgage or any part of it is paid, nor that the grantee therein assumes the payment of the balance of the mortgage not released. The rule is, that a release of a mortgage furnishes no presumption of the payment of the debt, if the release, as is the case here, contains no recital that the debt is paid; nor does the discharge of a mortgage by the mortgagee, necessarily and of itself, discharge the debt, but only the security for the debt. (1 Jones on Mortgages, sec. 984). The grantor here states, in substance, that the residue of the lots shall remain as security for whatever money may remain unpaid on the mortgage. The grantee, accepting the release, does not thereby admit that there is a balance unpaid by him, and which he owes.

We are, therefore, of the opinion that the release deed referred to cannot be so construed, as in any way to constitute an acknowledgment of any part of the indebtedness, so far as Simon G. Miner is concerned. As the last payment, made upon the note for $5981.66, dated July 9, 1873, was so made on September 1, 1883, that note was barred by the Statute of Limitations on September 1, 1893. As the release deed did not operate to keep the note renewed until July 11, 1894, section 19 of the Limitation law has no application, and the Statute of Limitations was correctly held by the court below to be a defense to the third note for $5981.66.

For the reasons above stated the judgment of the Appellate Court and the decree of the circuit court are reversed, and the cause is remanded to the circuit court with directions to enter a decree in favor of the appellant for the amount due upon the first and second notes for $2500.00 and for $1153.55 respectively, and foreclosing the mortgages securing these notes, but in favor of the appellees as to the note for $5981.66, dated July 9, 1873, which note, and the mortgage securing the same, are barred by the Statute of Limitations.

*Reversed and remanded.*