## Reuben P. Metcalf, Appellee, v. Jemima Metcalf et al., Appellants.

## Gen. No. 6,834.

1. WITNESSES, § 135*—*what is effect of incompetency of party.* A plaintiff in a suit to foreclose a trust deed, given to secure promissory notes, brought against the devisees of the maker, though incompetent as a witness generally, under section 2 of the Evidence Act (J. & A. ¶ 5519) can, nevertheless, make the affidavit of the loss of the notes necessary to lay the foundation for secondary evidence of their contents.

2. EVIDENCE, § 134*—*what is effect of preliminary proof when notes are lost.* In a suit to foreclose a trust deed, given to secure promissory notes, brought by the assignee of such deed and notes against the maker's devisees, an affidavit by complainant as to the loss of the notes is not proof of their contents.

3. APPEAL AND ERROR, § 1505*—*when testimony of incompetent witness is harmless.* In a suit to foreclose a trust deed, given to secure promissory notes, brought by the assignee of the deed and notes against the maker's devisees, that the complainant, though not competent under section 2 of the Evidence Act (J. & A. ¶ 5519), was examined, over defendant's objection, as to the contents of the notes, is harmless error since the case was tried without a jury.

4. EVIDENCE, § 134*—*when affidavit is sufficient as foundation for secondary evidence.* In a suit to foreclose a trust deed given to secure promissory notes, an affidavit introduced as the foundation for giving secondary evidence of the contents of the notes which states that affiant, the complainant, kept the notes in a trunk at his residence; that since a certain date he has lost the notes or they have been abstracted; that he has carefully searched the trunk and all places in his residence and elsewhere where he kept papers and the notes were likely to be found and was unable to find them; that they were not intentionally or purposely lost for the purpose of introducing secondary evidence; that the last he knew of them they were in the trunk; that it is not in his power to produce them, *held* sufficient to authorize secondary evidence of their contents.

5. CONFLICT OF LAWS, § 31*—*what law governs as to remedy on contract.* Remedies on contracts are to be regulated and pursued according to the law of the place where the action is instituted.

6. LIMITATION OF ACTIONS, § 11*—*what statute governs action on

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

*contract.* Notes given March 21, 1872, are subject to the 16-year Limitation Act then in force under the Act of November 5, 1849, the acts of 1872 and 1874 repealing that act not being applicable to them.

7. LIMITATION OF ACTIONS, § 96*—*what is effect of part payment.* A partial payment on the debt, made by the party originally chargeable and received thereon by the party who owns the notes evidencing the debt, implies a new promise by the debtor to pay the debt, whether the payment is before or after the bar of the statute of limitations.

8. LIMITATION OF ACTIONS, § 87*—*what statute applies when new promise is given.* A new promise created by a partial payment of the debt by the party chargeable is governed by the statute of limitations in force when the new promise is made.

9. APPEAL AND ERROR, § 1301*—*what will be presumed as to evidence in trial by chancellor.* On appeal from a decree in chancery, that incompetent evidence was admitted is not ground for reversal, as it will be assumed that in rendering his decree the chancellor considered only the competent evidence.

10. MORTGAGES, § 426*—*when foreclosure is not barred by limitations.* Foreclosure of a trust deed or mortgage securing a note or debt is not barred until the debt is barred, and if the debt has been kept alive, the statute of limitations is no defense to the foreclosure.

11. NOTICE, § 30*—*what is effect of record of mortgage.* One who takes subsequent title to the land with knowledge from the public records that there is an unreleased trust deed or mortgage thereon takes the land with notice that it is subject to the trust deed or mortgage, unless the debt secured thereby is barred.

12. LIMITATION OF ACTIONS, § 96*—*what is effect of part payment.* Payment on a promissory note stops the previous running of the statute of limitations, and the statute begins to run after the last payment.

13. EVIDENCE, § 99*—*when trust deed is competent evidence of debt secured.* A trust deed securing promissory notes which contains a full description of them is competent evidence of the contents of such notes.

14. MORTGAGES, § 505*—*when existence of debt is established.* In a suit to foreclose a trust deed securing promissory notes in which complainant had laid the foundation for the introduction of secondary evidence of such notes, the existence and contents of the notes were sufficiently established by introducing the original trust deed, executed and acknowledged on the day the notes were signed, the signature to the deed being also proved by a witness,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.
Vol. CCXIX 7

which deed contained a full description of the notes, and by evidence of a witness who had seen the notes describing them, where there is no evidence contradicting the description of the notes as given in the deed and by such witness.

15. MORTGAGES, § 505*—*when evidence shows ownership of mortgage.* In a suit to foreclose a mortgage securing promissory notes of the mortgagor brought by one claiming to own the deed and notes, evidence examined and *held* sufficient to support a decree that complainant was owner of the notes and mortgage.

16. LIMITATION OF ACTIONS, § 94*—*when indorsement on note shows part payment.* An indorsement of partial payment on a note made by the holder without the privity of the maker is not, of itself and uncorroborated, sufficient evidence of payment to repel the defense created by the statute of limitations, unless it is shown to have been made at a time when its operation would be against the interest of the party making it.

17. BILLS AND NOTES, § 96*—*when extension of note is valid.* An extension of a note for the lifetime of the maker for a valuable consideration is a valid agreement.

18. LIMITATION OF ACTIONS, § 90*—*when part payment is proved.* On a bill to foreclose a mortgage given to secure the payment of promissory notes of the mortgagor in which defendant pleaded the statute of limitations and contended that certain payments indorsed on the note which would defeat the bar of the statute were made by the holder of the note without authority, evidence reviewed and *held* to support a finding that payments had been made which barred the running of the statute.

19. MORTGAGES, § 396*—*when defense of failure to record extension is waived.* On a bill to foreclose a mortgage, the defense that the extension of the mortgage was not recorded as required by section 11½ of the Limitations Act, in force July 1, 1915 [Callaghan's 1916 Stat. ¶ 7206(1)] is waived unless pleaded.

20. APPEAL AND ERROR, § 1713*—*when defense is waived because not argued.* A defense which does not appear in the abstract and which appellee declares in his brief was not raised below will be regarded by the Appellate Court as having been waived, notwithstanding appellant's reply brief claimed that it was raised but without pointing out any place in the record where it can be found.

21. MORTGAGES, § 396*—*when statute as to recording extension of mortgage does not apply.* Section 11½ of the Limitations Act, in force July 1, 1915 [Callaghan's 1916 Stat. ¶ 7206(1)], requiring an extension agreement to be recorded within 5 years to keep a mortgage alive and allowing the holder of such an incumbrance 5 years from July 1, 1915, in which to obtain an extension agree-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ment, does not apply to a mortgage, to foreclose which suit was begun, a decree rendered, appeal taken and the cause under advisement in the Appellate Court before the expiration of the 5-year period.

22. MORTGAGES, § 632*—*when decree is alternative.* A decree, on foreclosure of a mortgage, that defendants pay the sum found due with interests and costs within 10 days, and that in default thereof the mortgaged premises be sold, is not a personal but an alternative decree.

23. APPEAL AND ERROR, § 663*—*how appeal bond in foreclosure proceedings should be conditioned.* An appeal bond conditioned to pay the amount of the decree rendered on foreclosure of a mortgage not against defendants personally and not providing for a deficiency decree is improper where such a bond was not required by the order granting the appeal, but should have been for costs or costs and interest on the decree from the date of its rendition.

24. MORTGAGES, § 660*—*when solicitor's fees are not allowed.* Where a mortgage is foreclosed by a suit in equity, solicitor's fees cannot be allowed, even though the mortgage provides for attorney's fees on foreclosure under power of sale as therein authorized.

25. MORTGAGES, § 660*—*what is necessary that solicitor's fees be allowed.* Solicitor's fees for a foreclosure in equity are not provided by statute and can only be allowed if the contract so provides.

Appeal from the Circuit Court of Kankakee county; the Hon. ARTHUR W. DE SELM, Judge, presiding. Heard in this court at the April term, 1920. Modified and affirmed. Opinion filed October 12, 1920. Rehearing denied November 11, 1920.

GOWER & HOBBIE and VARNUM A. PARISH, for appellants.

E. P. HARNEY, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

This is a bill in equity brought by Reuben P. Metcalf to foreclose a trust deed on land in Kankakee county, given to secure four notes, a principal note for the sum of $1,200, due three years after date, and three coupon notes of $120 each, due respectively in one, two and three years after date, all drawing interest at 10 per cent per annum after maturity. The trust

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

deed and notes were dated March 21, 1872. It is claimed that the debt has been kept alive by payments and other matters hereinafter stated. The notes and trust deed were given by Silas Metcalf and his then wife. It is claimed that the trust deed and notes were assigned by E. C. Dwelle, the grantee and payee, to Fisher Metcalf, and were afterwards by him assigned to Reuben P. Metcalf, the complainant. Silas Metcalf died May 15, 1918, leaving a widow and no descendants surviving him. By his last will, which was admitted to probate in Kankakee county, he gave a life estate in all his property to Jemima Metcalf, his widow (not the wife who signed the instruments being foreclosed), and subject thereto he gave all his property to Neil Metcalf, whom he described in the will as the boy whom he brought up, and who was not shown to be any relation to him. Fisher Metcalf was the father of Silas, Spencer, Reuben, Frank and Edwin Metcalf. The bill was filed August 24, 1918, against Jemima Metcalf, the widow, Neil Metcalf, personally and as executor of the will of Silas Metcalf, and Edwin Metcalf. The widow and Neil answered. Edwin did not answer and what interest he had does not appear. The answer called for proof of the execution and alleged assignments of the instruments in question, and alleged that if there were such instruments they had been paid, and it set up the statute of limitations. The cause was tried and there was a decree of foreclosure for $8,140 and costs. The widow and Neil filed separate appeal bonds and bring the case here upon one record.

Complainant filed an affidavit of the loss of the notes as a basis for secondary evidence of their contents. It is denied by appellants that he was competent to make that affidavit. Complainant was not a competent witness generally, under section 2 of the Evidence Act (J. & A. ¶ 5519), because the suit is against the devisees of a deceased person. When parties

were wholly incompetent to testify on their own behalf in all cases, still a plaintiff could make the affidavit of loss of an instrument necessary to lay the foundation for secondary proof of its contents. In *Dormady v. State Bank of Illinois*, 3 Ill. (2 Scam.) 236 (in 1840), it was held that the practice of admitting the oath of a party as evidence of loss of a paper arises from the necessity of the case, and that it is not to go to the jury, but is addressed to the court to establish the right of the party to introduce secondary evidence to prove the contents of the lost paper. In *Palmer v. Logan*, 4 Ill. (3 Scam.) 56, in announcing the same rule, the court said: ''Much serious and irreparable injustice might be done to individuals, should a different rule prevail. There are many circumstances which might, and most probably would, prevent any other person from knowing the fact of a loss or destruction of a private writing.'' In *Wade v. Wade*, 12 Ill. 89 (in 1850), it was held that the oath of a party was competent and sufficient to lay the foundation for secondary evidence of the contents of a lost note. Parties were made competent to testify generally (but not against devisees and the like), by the Act of 1867. Gross' Statutes, p. 286. In *Becker v. Quigg*, 54 Ill. 390, the court said:

''This court has gone to this extent, and no farther: that a party to the suit may make an *ex parte* affidavit as to the loss of a paper, so as to permit secondary evidence of the contents. This arises from the necessity of the case. Until our recent statute, parties could not be witnesses, except in special cases before justices of the peace. The general rule was, that a man could not be a witness in his own cause. The exception has been made, as promotive of justice, and from the fact that the loss of a paper is generally known only to the party.''

*Taylor v. McIrvin*, 94 Ill. 488. In *Tayloe v. Riggs*, 1 Pet. (U. S.) 591 (in 1828), Chief Justice Marshall, speaking for the court on this subject, said:

"As the fact is generally known only to the party himself, there would seem to be a necessity for receiving his affidavit in support of it. * * * In the case before the court it is not probable that any other testimony of the loss of the paper was attainable; and we think the affidavit of the party laid a proper foundation for the admission of secondary evidence."

The affidavit was therefore proper to be received by the court as a basis for secondary evidence of the contents of the notes. But it was not proof of their contents. Complainant was examined as a witness on the same subject, subject to objection. As there was no jury, defendants were not harmed thereby, though complainant was not a competent general witness on that subject. In the affidavit complainant stated, among other things, that he kept the notes in a trunk at his residence; that since September 8, 1917, he has lost the notes or that the same have been abstracted; that he has carefully searched said trunk and all places in his residence and elsewhere where he kept papers of that kind and where said notes might likely be found, and was unable to find them; that they were not intentionally lost or disposed of for the purpose of introducing secondary evidence thereof; that the last he knew of them they were in his possession in said trunk, and that it was not in his power to produce them at the trial. The affidavit was sufficient to authorize secondary evidence of the contents of the notes.

Defendants answered that the remedy sought was barred by the statute of limitations, but did not state what statute was relied upon. The notes were made in Illinois and were secured on land in Illinois, but they were payable at Rushville, Yates County, New York. Remedies on contracts are to be regulated and pursued according to the law of the place where the action is instituted. As the statute operated merely upon the remedy, the law of the forum controls. Wood on Limitations, sec. 8; 13 Am. & Eng. Encyc. of Law

(1st Ed.) 768. These notes were given March 21, 1872. The statute of Illinois for the limitations of action on notes was then 16 years. Gross' Statutes, ch. 66, par. 17, p. 430. That Act of November 5, 1849, was repealed in 1872 by section 24 (J. & A. ¶ 7219) of the Limitation Act then adopted, section 16 (J. & A. ¶ 7211) of which made the limitation on such instruments 10 years, but said section 24 contained this provision: "But this section shall not be construed so as to affect any rights or liabilities, or any causes of action, that may have accrued before this Act shall take effect." Said Act of November 5, 1849, was again repealed in 1874 by the general repealing Act, chapter 131, sec. 1, par. 138 (J. & A. ¶ 11106), but section 2 (J. & A. ¶ 11107) of said Act contained the following provision: "And when any limitation law has been revised by this or the twenty-seventh General Assembly, and the former limitation law repealed, such repeal shall not be construed so as to stop the running of any statute, but the time shall be construed so as to stop the running of any statute, but the time shall be construed as if such repeal had not been made." The twenty-seventh General Assembly therein referred to was the one which adopted the Act of 1872. Therefore the 16-year limitation applies to this case, so far as relates to the original cause of action. A partial payment on the debt, made by the party originally chargeable, and received thereon by the party who owns the notes which evidence the debt, implies a new promise by the debtor to pay the debt, and this is equally true whether the payment is before or after the bar of the statute of limitations has become complete. *Kallenbach v. Dickinson,* 100 Ill. 427. But such new promise is governed by the statute of limitations in force when the new promise is made. *Drury v. Henderson,* 143 Ill. 315; *Walker v. Warner,* 179 Ill. 16; *Wellman v. Miner,* 179 Ill. 326. All payments claimed to have been made on these notes are

alleged to have been made after the Limitation Act of 1872 went into force on July 1, 1872. It follows that until the first payment so relied upon by complainant, the limitation of 16 years is applicable, but the new promise thereby created would be barred in 10 years under the Act of 1872.

Complainant was examined generally as a witness in his own behalf. He gave some testimony before any objection was made of his competency and that evidence was competent to be considered by the court because not objected to. Objection was made to the material parts of his testimony. Generally the court made no ruling but said the evidence would be admitted subject to objection. In one instance the court during the hearing stated that he thought the witness competent for certain purposes. The action of the court upon objections made to the testimony of the complainant is made the subject of numerous assignments of error, and it seems to be supposed by appellants that if the court failed to rule correctly on any such objection, that would be reversible error. The rule is otherwise in equity. In *Treleaven v. Dixon*, 119 Ill. 548, in discussing this question the court said:

"In chancery cases, the whole record, including all the evidence offered, is before us, and we are required to assume that all the incompetent evidence was rejected, and all the competent evidence was admitted and considered, on the final hearing. If there is competent evidence in the record sufficient to sustain the decree, it must be affirmed; if not, it must be reversed, and this without regard to whether the chancellor may have been right or wrong in his views as to the competency of the evidence at the hearing."

In *Goelz v. Goelz*, 157 Ill. 40, the court quoted with approval from *Swift v. Castle*, 23 Ill. 214, as follows:

"The question presented upon the trial before the chancellor, as well as in the Appellate Court, is, upon all the legitimate evidence in the cause, what decree

should be rendered? The chancellor being the judge of both the law and evidence, the presumption is that in rendering his decree he will only regard that which is legal and pertinent. * * * It is the correct practice for the chancellor, after the evidence is heard, to regard no portion of it which is immaterial or illegal, and to decide the case alone on the legal evidence adduced. Such is believed to have been the uniform practice, which has been adopted from considerations of convenience, and is in no way calculated to hinder or delay the administration of justice, and no reason has been suggested, nor is any perceived, why it should be changed.''

In *Riehl v. Riehl*, 247 Ill. 475, the court said:

''The rule which is applicable to the trial of chancery proceedings is, that any error which may have been committed in rulings upon the admission or exclusion of evidence is unimportant if there is competent evidence in the record sufficient to support the decree, and that the evidence which ought to have been considered would not, if considered, change the result. The question in such case is whether or not, upon the whole record, substantial justice appears to have been done to the parties.''

In the present case the remark by the court that he thought complainant a competent witness on certain subjects named was made in the first part of the hearing, which was before an adjournment to take a deposition, and before defendants offered their proof after the return of the deposition, and was some months before the decree. The court repealed that remark or ruling with a qualification not shown in the abstract during the second part of the hearing, but that was more than two months before the decree. There is no reason therefore why we should not apply the rule stated in the foregoing authorities and in other cases and assume that in the final decision of the case the chancellor considered only the competent evidence, and the only question before us on that subject is whether the competent evidence supports the decree.

In this State a foreclosure of a trust deed or a mortgage securing a note or debt is not barred until the debt is barred, and if the debt has been kept alive the statute of limitations is no defense to the foreclosure; and one who takes subsequent title to the land with knowledge from the public records that there is an unreleased trust deed or mortgage thereon, takes with notice that the land is subject to said trust deed or mortgage, unless the debt secured thereby is barred. *Murray v. Emery*, 187 Ill. 408; *Kraft v. Holzmann*, 206 Ill. 548, and cases there cited. Payment on a promissory note stops the previous running of the statute of limitations. The statute begins to run after the last payment on the note. *Schifferstein v. Allison*, 123 Ill. 662; *Stein v. Kaun*, 244 Ill. 32.

Complainant introduced in evidence the original trust deed. It was executed by Silas Metcalf and his then wife on the day of the date of the notes and was acknowledged by them on that day and was soon thereafter recorded. The signatures of Silas and his wife to said trust deed were also proved by Frank Metcalf. Said trust deed contains a full description of the notes. It is competent evidence of the contents of said notes. *O'Neil v. O'Neil*, 123 Ill. 361. Frank Metcalf saw the notes and described them in his testimony. There is no evidence contradicting the description of the notes in the trust deed and in the evidence of Frank. The existence and contents of the four notes here in question were in our judgment fully proved by competent testimony, without resorting to the incompetent testimony of complainant on that subject.

Does the competent proof show that complainant is the owner and legal holder of these notes? The instrument securing said notes is called a trust deed in the pleadings and frequently in the evidence, but is really a mortgage, as the payee of the notes, E. C. Dwelle, is the grantee. Complainant introduced in

evidence an original of a written assignment of said mortgage with the bond or obligation therein described and the money due or to grow due thereon, with the interest. This assignment was from Dwelle to Fisher Metcalf and was dated May 8, 1878, and was duly acknowledged and the official character of the acknowledging officer certified on that day, and it was recorded in Kankakee county on April 17, 1893, and again on June 8, 1918. He also introduced in evidence an original written assignment by Fisher Metcalf to Reuben P. Metcalf, complainant, of said mortgage with the bond accompanying said mortgage and therein referred to and all sums of money due and to grow due thereon. This was dated April 7, 1893, and acknowledged and certified on that day and recorded in Kankakee county on April 17, 1893. Frank Metcalf testified that the signature to said last instrument was the handwriting and signature of Fisher Metcalf, his father. Complainant introduced in evidence a release by Reuben Metcalf, complainant, to his brother, Spencer Metcalf, of part of the real estate incumbered by the mortgage here in question (being premises not included in the decree of foreclosure therein). Said partial release is dated August 24, 1897, and acknowledging that day, and the character of the acknowledging officer certified on February 13, 1900, and the instrument is recorded in Kankakee county on April 17, 1900. Said partial release contains these words: "Retaining and holding the remainder of said mortgaged premises as security for the payment of said mortgage, according to its conditions." Frank testified that the signature to this partial release was that of his brother, the complainant. These instruments, the genuineness and validity of which are not questioned here, tend to show that complainant became the owner of the debt secured by this mortgage on or before April 7, 1893, and that he was still the owner thereof on August 24, 1899,

and there is no evidence that he ever parted with such ownership. Frank testified that Fisher Metcalf, his father, lived with him in New York State 3 years and then went to live with his son, Spencer, on an adjoining farm; that 3 or 4 years after Fisher went to live with Spencer, Frank moved to Momence, Illinois; and thereafter lived one mile from Silas; that Fisher, the father, died in 1893, in the State of New York; that Frank had a conversation with his father in which the latter told Frank that he gave this trust deed and the notes therein described to Reuben P. Metcalf, the complainant; that he remembers his father dividing this estate before he died and that, in that division, this mortgage and the notes therein described given to complainant; that he thinks this gift by Fisher to Reuben was in 1891 or 1892; that he did not remember seeing the notes at that time but thought they were in the mortgage when it was handed to Reuben; that this was done at Spencer's home in New York State, and that Eva Metcalf, wife of Spencer, handed them to Reuben; that the assignment had been drawn recently before that time and that he thinks the assignment was delivered to Reuben at that time. He testified that he knew the justice who drew the assignment and took the acknowledgment, and the witness testified that he thought he was present when Fisher signed it. Frank testified that Fisher kept his papers in a box in his sleeping room and that Fisher got the papers out of that box in his sleeping room and that Fisher got the papers out of that box and handed them to Eva and Eva handed them to Reuben and Reuben took them to his home. He testified that his father told Reuben not to crowd Silas on the mortgage during Silas' lifetime. Frank testified that the notes were lost some time in 1917; that after the notes were given by his father to Reuben, the witness had several conversations with his father about the gift, in which his father said Reuben

never got anything out of his estate and was waiting a long time for his share of the property. The only attempt to contradict the proof of this gift was by the deposition taken orally of Eva Metcalf, widow of Spencer, who had died before this trial. She testified that she was present at the time of that gift and that her husband's father, Fisher, handed her the mortgage and told her to hand it to Reuben and she did, but no notes were handed Reuben at that time. On cross-examinations and re-examinations, it turned out that she did not know that any notes went with the mortgage or had any connection therewith; that she supposed that by giving Reuben the mortgage Fisher was giving him $1,200 worth of property; that there was another mortgage securing $2,000 given by Silas and held by Fisher which was then given by Fisher to her husband, Spencer. She testified that after Fisher died, her husband was going west to see Silas and said he would take along Silas' notes, and got some notes and put them in his satchel and she did not think they were connected with the $2,000 mortgage. She finally testified that she did not know that the notes which Spencer put into his satchel were the notes described in this mortgage held by Reuben. Frank testified that when he saw the notes, the name "E. C. Dwelle" was written on the back of the notes and also the name "Fisher Metcalf," and that the latter name was in the handwriting of his father, Fisher Metcalf. Frank testified that he and Reuben went from New York State to the World's Fair at Chicago with an exhibit; that while there they went to Momence and stayed over night and Silas and they came back to Chicago the next day and that in the evening of that day, which was in October, 1893, they had a conversation in a hotel with Reuben, Silas and Frank present, at which these four notes were present in the possession of Reuben, in which there was a conversation between Reuben and Silas about them

which he narrated, and in which the existence and validity and time of payment of these four notes were discussed, and that Silas then made a payment thereon to Reuben, and that Reuben indorsed one-fourth of said payment on each of said four notes and afterwards put the notes back in his pocket. Frank also testified that in March, 1899, by direction of Silas, he paid $25 of Silas' money to Reuben on these notes and saw Reuben indorse parts of said payment on each of said four notes at the home of Reuben in New York State. Frank testified that after he moved to Momence he saw Silas almost every day and that he knew that these notes were never paid. He also testified that Reuben kept this trust deed and those notes in an old trunk in his sleeping room at his home. Frank Metcalf, Junior, son of Frank Metcalf, testified that on August 8, 1915, when he was about to leave Momence for New York, Silas handed him $10 and said he had had a letter from Reuben and he asked the witness to give the $10 to Reuben "to apply on the mortgage and notes he holds against me"; that he went east next day and went to Reuben's home and handed him the $10, and told Reuben to apply it on the mortgage and notes Reuben held against Silas; that Reuben went to a trunk and took out four notes and the trust deed and made an indorsement "received August 14, $2.50" on each of the four notes. Except as to the testimony of Mrs. Eva Metcalf, the truth of this evidence is not contradicted, except by suggestions of its improbability. It is not shown that Silas ever had possession of these notes or the trust deed. We are of opinion that this evidence justified the decree that complainant was the owner of said notes and trust deed or mortgage.

There are indorsed on the back of the mortgage payments as follows: $110 on September 14, 1887; $25 on March 28, 1899; $10 on April 21, 1908; $10 on July 5, 1915; and $15 on September 8, 1917. The first

indorsement is in the hand of Frank Metcalf and the rest in the hand of complainant. It is also claimed that $50 was paid in 1893 and $100 in 1909. An indorsement of partial payment on a note, made by the holder without the privity of the maker, is not of itself and uncorroborated, sufficient evidence of payment to repel the defense created by the statute of limitations. *Connelly v. Pierson,* 9 Ill. (4 Gilm.) 108; *Wellman v. Miner,* 179 Ill. 326; *Roseboom v. Billington,* 17 Johns. (N. Y.) 182. In the latter case English authorities are discussed and the qualification of the rule was "unless it be shown that it was made at a time when its operation would be against the interest of the party making it." These considerations are to be borne in mind in passing upon the evidence of the making of said payments.

The first payment in question, $110, September 14, 1887, is proved by Frank Metcalf. He then lived in New York State and was buying horses in Illinois to ship to New York and he shipped one brown mare that belonged to his brother, Silas. Silas told him to sell that mare and sent him $90 and indorse the rest of the proceeds on these notes and mortgage. He sold the animal for $200, sent Silas $90 and paid to his father, Fisher Metcalf, then the owner of the securities, $110, and the witness indorsed $27.50 each on the four notes and the whole sum, $110, on the mortgage. There is nothing in the record to dispute this testimony. Frank was acting as the agent of Silas, and with that fact proved the indorsement by Frank is as effective as if made by Silas himself. The next payment is of $50 in October, 1893, in a hotel at the World's Fair, Chicago. At that time Silas, Reuben and Frank being present, and Frank then the owner of these notes and mortgage, Silas said to Frank: "I suppose you are going to let that mortgage run as father requested to the end of my life." Silas also told Reuben that he was not able to pay the debt and

that Reuben would run no risk, for the land was increasing in value. Reuben said that he would do that if Silas would make payment of interest from time to time, even in small amounts, so that the notes did not outlaw. Silas replied that he would do it if Reuben would let it run, and he then paid Reuben $50, and Reuben took the notes out of his pocket and indorsed $12.50 on each note and put the notes back in his pocket. An extension of the notes for the lifetime of the maker for a valuable consideration would be a valid agreement, because the time fixed must certainly arrive. *Dorsey v. Wolff*, 142 Ill. 589. We see no reason why this did not constitute an extension for the lifetime of Silas. If so, the statute of limitations cannot be a defense. But if it be supposed that there is some invalidity in that agreement, we must consider other payments. Frank testified that in 1899 he shipped another horse to New York for Silas and Silas directed him to pay a part of the proceeds on these notes and send him the balance; and he did sell the horse and for Silas paid $25 to Reuben and Reuben divided the payment among each of the four notes and he saw him make the indorsements on these notes. To rebut this defendant called two witnesses, one a tiler, who lived on, but did not work, Silas' farm at that time, and another a painter and paperhanger, who lived on said farm at that time; and they each testified that they had no recollection of any such horse owned by Silas being on that farm and were positive no such horse was shipped east by Silas. They were testifying nearly 20 years after the event and their testimony was negative. Their occupation was not such as to require them to be acquainted with what stock Silas had. Frank did not testify that Silas took that horse from his farm. He may have obtained it elsewhere. We think the positive testimony of Frank should prevail, and this establishes a payment in 1899. Complainant claims a payment of $100 was made in

1909 out of $1,260 which Silas received for a railroad right of way through his farm. This was sought to be proved by Frank, and the final result of the proof is that he did not see $100 sent, but Silas told him that he was going to send $100 to Reuben. As Frank could not swear that $100 was sent and as Reuben was not a competent witness, there is no sufficient proof of this payment, and it is unnecessary to discuss the contradictory evidence on that subject.

Defendants argue that if these notes had been outstanding, Silas would have paid them out of the $1,260 received by him in 1909 for right of way. That was less than one-third of the sum then due on these notes. Silas had nothing else with which to pay them. He was old and feeble and had only the rent of the farm for his support, and had no child for whom to try to save the farm. This money would be very desirable for the emergencies of old age. If he knew his father had arranged that the mortgage should not be foreclosed while Silas lived, he would naturally keep this money for the needs of himself and wife. He finally gave $500 of it to Neil.

Frank Metcalf, Junior, testified that as he was leaving Momence for the old home in New York, Silas handed him $10 and asked him to take it to Reuben, who lived in New York State, and pay it to him and tell Reuben to apply it on the mortgage and these notes; that he did so pay it and Reuben got the notes and trust deed out of the trunk and made an indorsement of $2.50 on each note as of the date, August 14, 1915. The witness was the agent of Silas in making this payment and this evidence is entirely undisputed. The only criticism possible is that there is an indorsement of $10 on the mortgage as paid July 5, 1915. Whether that is another payment or a mistake in the date is not shown and is immaterial. This payment of August 14, 1915, was a little less than 3 years before the bill was filed and disposes of the statute of

limitations as a defense, if it was so paid, as the evidence required us to hold. Another payment of $15 on September 8, 1917, and a previous payment of $10 on April 21, 1908 or 1909, indorsed by complainant on the mortgage seem to rest only on the evidence of complainant and therefore are not sufficiently established. We are clear that under the evidence this suit is not barred by the statute of limitations.

In their brief here appellants claim that this suit cannot be maintained because of section 11½ of the Limitations Act [Callaghan's 1916 Stat. ¶ 7206(1)], in force July 1, 1915, which requires an extension agreement to be recorded within 5 years to keep such a mortgage as this alive. To this we think there are several sufficient replies: (a) This defense was not pleaded. It was therefore waived. (b) Appellee in his brief declares that the question was not raised in the court below. Appellants in their reply brief declare that it was, but do not point out any place in the record where that can be found. 'It is not shown in the abstract. As the case is presented to us, this supposed defense was not raised in the court below. It was therefore waived. (c) The statute gave the holder of such an incumbrance 5 years from July 1, 1915, in which to obtain an extension agreement. Silas died, this suit was begun, and tried, and reached a decree and the appeal was prosecuted to this court and the cause taken under advisement here, before the end of said 5 years. We think the statute is not now applicable to this case. (d) If the statute can mean that under all these circumstances it constitutes a defense now to this case in this court, we should be disposed to hold it invalid as so applied.

' The decree ordered the defendants to pay the sum found due with interest and the costs within 10 days, and that in default thereof the mortgaged premises be sold. Defendants are not personally liable. It would have been better form to have provided that un-

less the defendants pay said sum within 10 days, the premises be sold. But there is no provision for a deficiency decree against defendants and it has been held that this is not a personal but an alternative decree. *Gochenour v. Mowry*, 33 Ill. 331; *Glover v. Benjamin*, 73 Ill. 42; *Roberts v. Flatt*, 142 Ill. 485; *Pierce v. Coryn*, 139 Ill. App. 445; *Rubendall v. Tarbox*, 200 Ill. App. 260. Defendants each gave an appeal bond in the sum of $200 conditioned to pay the amount of said decree. The order granting the appeal did not require any such bond. It was purely voluntary. It should have been for costs or, if the land was scant security for the debt, it should have been for costs and interest on the decree from the date of its rendition. Defendants should have asked the court to fix the conditions of the appeal bond, and did not do so.

The court directed that $415 be taxed as costs for the reasonable solicitor's fees of complainant. The mortgage in question provided for foreclosure by the exercise of a power of sale, which required an advertisement for 4 weeks in a newspaper published in Kankakee county, and a sale by the mortgage and a deed of conveyance. The attorney's fees allowed by said instrument were for drawing said advertisement, conducting said sale, preparing the deed and perhaps for the expense of distributing the fund. This mortgage was not foreclosed in that way. This mortgage contained no directions concerning a foreclosure in equity. Solicitor's fees for a foreclosure in equity are not provided by statute and can only be allowed if the contract so provides. There being no such provision in this mortgage that allowance cannot be sustained. It is not questioned that the decree is otherwise for the proper amount, if foreclosure can now be had.

The decree will be so modified in the court below as to strike out the provision requiring attorney's fees to be taxed as costs. In all other respects it is affirmed.

*Modified and affirmed.*