## William H. Barclay

### v.

### Lafayette H. Smith.

*Filed at Ottawa May 10, 1883—Rehearing denied September Term, 1883.*

1. MEMBERSHIP IN BOARD OF TRADE—*is not property—and is not subject to judicial sale.* A certificate of membership in the board of trade of the city of Chicago, is not property, in any such sense as to render it liable to be subjected to the payment of the debts of the holder by legal proceedings.

2. The board of trade of the city of Chicago is a corporation. Under its charter and by-laws no one can become a member except upon a favorable vote of not less than ten of the board of directors; nor is a certificate of membership transferable to any person except he be approved by the directory, after due notice. The right of membership is not a right which the holder can dispose of as he pleases; nor can it be enforced in favor of a purchaser or assignee of the certificate, by the courts. It has none of the elements of property to render it liable to judicial sale.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE GARDNER, Judge, presiding.

Messrs. LAWRENCE, CAMPBELL & LAWRENCE, and Mr. JOHN H. BATTEN, Jr., for the appellant:

A membership in the board of trade of the city of Chicago is not property which can be subjected to the payment of debts by process of law, or order, or decree of court. *Nichols* v. *Eaton*, 91 U. S. 716; *Deere* v. *Chapman*, 25 Ill. 610; *Good* v. *Fogg*, 61 id. 451; Const. 1870, art. 4, sec. 32; Rev. Stat. chap. 52; *Gallagher* v. *Lane*, 16 Blatchf. C. C. 410; *Hyde* v. *Woods*, 94 U. S. 523; *Nicholson* v. *Gooch*, 5 El. & Bl. 999; *Ritterband* v. *Boggett*, 4 Abb. N. C. 67; *In re Sutherland*, 6 Biss. 526; *Thompson* v. *Adams*, 93 Pa. St. 55; *Pancoast* v. *Gowen*, id. 66; *Barry* v. *Kennedy*, 2 Abb. Pr. (N. S.) 421; *People ex rel.* v. *Board of Trade*, 80 Ill. 134; *Baxter* v. *Board*

*of Trade,* 83 id. 146; *Chase et al.* v. *Cheney,* 58 id. 509; *Robinson* v. *Yates City Lodge,* 86 id. 598; *Duvergier* v. *Fellows,* 5 Bing. 248; *Goesele* v. *Bimeler,* 14 How. 590; *Bennett* v. *Am. Art Union,* 5 Sandf. 614; *Collyer* v. *Fallon,* Turn. & Russ. 459; *Boss* v. *Hopkinson,* 18 W. R. 725; *Glover* v. *Moore,* 39 L. J. Chan. 98; *White* v. *Brownell,* 4 Abb. Pr. (N. S.) 162; *Nagle* v. *Stagg,* 15 id. 348; Morewetz on Priv. Corp. sec. 351.

The complainant in this case has a complete and adequate remedy at law, and is therefore not entitled to maintain a creditor's bill.    Rev. Stat. chap. 77, secs. 52, 55; Story's Eq. Jur. secs. 546–549.

Mr. C. BECKWITH, also, for the appellant.

Mr. MORTON CULVER, for the appellee:

The right of membership in a board of trade or stock exchange is an incorporeal hereditament, and is property which may be taken for the payment of the holder's debts in case of his bankruptcy or insolvency.    *Hyde* v. *Woods,* 2 Sawyer, 655; Same case, 4 Otto, 523; *Ritterband* v. *Boggett,* 4 Abb. N. C. 67; *In re Ketchum,* 1 Fed. Rep. 840; *Gallagher* v. *Lane,* 16 Blatchf. C. C. 410; *In re Warder,* 10 Fed. Rep. 275.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

There is but one question presented by this record, and that is, whether a certificate of membership in the board of trade of the city of Chicago, is property, which is liable to be subjected to the payment of the debts of the holder by legal proceedings.

The Board of Trade of Chicago is a corporation created by a special act of the legislature of the State, with power to sue and be sued, to purchase and hold property not to exceed at any time $200,000.    The objects of the corporation, as

declared by the charter and by-laws, are "to maintain a
commercial exchange; to promote uniformity in the customs
and usages of merchants; to inculcate principles of justice
and equity in trade; to facilitate the speedy adjustment of
business disputes; to acquire and to disseminate valuable
commercial and economic information; and generally, to
secure to its members the benefits of coöperation in the fur-
therance of their legitimate pursuits." By the 12th section
of the charter the corporation is prohibited from transacting
any business excepting such as is usual in the management
of boards of trade or chambers of commerce. No dividends
whatever are made among the members of the corporation.
No person can become a member unless he receives the
votes of not less than ten of the board of directors. A cer-
tificate of membership is transferable on the books of the
association to any person eligible to membership who may
be approved by the board of directors, after due notice. The
corporation has power to make by-laws for the management
of its business, and the mode in which it shall be transacted.
Under the by-laws the board of directors are required to
provide necessary rooms and offices for the purposes of the
association, which shall be kept open on all business days
during certain hours, for the admission of the members.

From an examination of the charter and by-laws of the
corporation it is apparent that no member receives any
pecuniary profit from the corporation, or from its capital or
revenue, except such advantage in the way of trade that he
may derive from the mere privilege of being a member, and
from being admitted to transact business in the rooms of the
board. If dividends were authorized to be declared among
the members, as stockholders, of the earnings or accumula-
tions of money or property, there might be some ground for
holding that a certificate of membership was property, and
liable to be taken for the debts of the member; but such is
not the case. However much money or property may be

accumulated by the board, it is powerless to declare a dividend among its members.

When the nature and object of a certificate of membership are understood, can it, upon any reasonable principle, be said to be property? In Bouvier's Law Dictionary, the author, under the head of "Property," gives a definition, as follows: "The right and interest which a man has in lands and chattels to the exclusion of others." The author also announces the rule that property, considered as an exclusive right to things, contains not only the right to use those things, but a right to dispose of them as the owner may desire. The certificate of membership is neither lands nor chattels, nor can a member dispose of his membership as he pleases. A sale can only be made to such person as the board, through its directors, may determine. If, then, a certificate of membership is property, it does not fall within the definition given, nor do we know of any definition of property within which it would fall.

It may be said that a certificate of membership has a large value, and hence ought to be regarded as property. It is true that the board requires a person who becomes a member to pay an initiation fee of $5000, and the evidence shows that a certificate of membership is regarded in the market as worth $4000; but this does not change the character of the right. A church organized under our statute may own property, for the uses and privileges of its members, worth as much as the property possessed by the board of trade, and the right of a member to attend the meetings of the church and occupy a pew may be regarded as a high and valuable right, and yet the right of membership has never been regarded as property which may be subjected to the payment of the debts of a member. The same may also be said in regard to the membership in a masonic lodge, or a social club, and various other organizations of a similar character.

There may be, and doubtless are, many privileges which a man may possess that are valuable to him, which do not fall within the definition of property, and which may be enjoyed, but can not be subjected to the payment of debts. A liquor dealer may be licensed to sell liquors at a certain place, for a certain time, for which privilege he is required to pay $1000 per annum. That privilege is worth to him much more than he is required to pay; but is that privilege property which may be sold on execution, or reached by a creditor's bill, for the payment of debts? We have never so understood the law. A peddler or an auctioneer may be licensed to carry on his vocation within a certain district, for which he may pay a stipulated sum of money. The profits arising from the privilege of exercising the right may be much larger than can be earned by a person exercising the right to transact business on the floor of the board of trade, and yet we have never understood that such a privilege was liable to be seized and sold in satisfaction of debts. The attorney and the physician are licensed to practice their professions. It costs money to obtain such a privilege. It may be, and is, a valuable right, and yet such a right can not be taken by a creditor's bill and sold in satisfaction of a debt. The same may be said in regard to various other privileges which may be, and often are, conferred upon persons in the different pursuits of life.

A certificate of membership in the Board of Trade of Chicago empowers the person who is admitted as a member to attend the meetings of the board, and deal in the various products of the country. This right to appear at a certain place and transact certain business, in our judgment is not property, but it is a mere privilege conferred upon the member, which can not be reached and sold by the process of courts. It is a right which may be regarded as valuable, but which can not be divested or destroyed, except by the board itself, for a failure of the member to conform to the

23—107 ILL.

rules and regulations of the association. This view is in harmony with the rule announced by the Supreme Court of the State of Pennsylvania, where a similar question arose. *Thompson* v. *Adams,* 93 Pa. St. 55; *Pancoast* v. *Gowen,* id. 66.

We have been referred to some cases which seem to hold a different view, but without entering upon a review of the cases cited we do not think they establish the correct rule, and we are not inclined to follow them.

The judgment of the Appellate Court will be reversed, and the cause remanded.

*Judgment reversed.*

Subsequently, on an application for a rehearing, the following additional opinion was filed:

Mr. JUSTICE CRAIG: A petition for a rehearing has been filed in this case, in support of which we have been favored with an elaborate argument, in which it is urged that the decision rendered by this court is not in harmony with the current of authority on the question involved. We have given the argument of the petitioner a careful consideration, but we are unable to arrive at a different conclusion from that reached on the original argument of the case.

In the petition for a rehearing it is said: "Appellee does not claim that Barclay's membership is property that he could levy on by attachment, execution or garnishment, at law, but he does claim that the 'incorporeal right' which Barclay has to a seat on the board of trade is property,—valuable property,—and can be reached in chancery, subject only to the prior claims of his co-members of the board for debts contracted in the regular course of business on the exchange." It is true that, under our statute, certain assets of a judgment debtor not liable to be levied upon and sold under execution as property, strictly speaking, may be reached by a judgment creditor by a creditor's bill, as, money, things in action due to the judgment debtor, or held in trust for him;

but does a certificate of membership in the board of trade fall within that species of property?

We have been referred to *Hyde* v. *Woods*, 4 Otto, 523, as an authority sustaining the position of appellee. That was a case brought by the assignee in bankruptcy of Thomas W. Fenn, to recover the proceeds of the sale of the seat of Fenn in the San Francisco Stock and Exchange Board, which came into the hands of the defendants within four months before the filing of the petition in bankruptcy. The court held that the plaintiff could not recover; that the proceeds of the sale of the seat were properly disposed of by the defendants in the manner provided for by the articles of incorporation. It is true the court, in its opinion, says that the incorporeal right which Fenn had to his seat was property, but, as we understand the decision, that was not a question involved in the case. The seat of Fenn had been sold and converted into money, and the action was brought by the assignee to recover that money in the hands of third persons. It was not a proceeding, as this is, to compel a certificate of mem- . bership to be delivered over to an officer of the court, and to obtain a decree ordering such officer to sell the certificate. If Barclay, the appellant, had sold his certificate of membership on the board of trade, and had converted it into money, and this was a proceeding to reach that money in the hands of a third party, in satisfaction of a judgment or for the benefit of creditors, then the case, in principle, would be like the one cited, and the case cited could be relied upon as authority. But such is not the case. Had the certificate been converted into money, and this was a proceeding to reach that money, we would have no difficulty in holding that the action was well founded; but the power of a court of chancery to divest a man of a mere right to transact business on the board of trade, and sell that right in satisfaction of a judgment, on the ground that such a right has value, is going further than we think the rules of equity will warrant.

We have also been referred to *Powell* v. *Waldron*, 89 N. Y. 328, as an authority on the question involved. In that case one Robbins, who was a member of the New York Cotton Exchange, pledged his certificate of membership, which entitled him to a seat, as collateral security for his note given for a loan of money. The amount due on the note was tendered the holder, and he refused to accept the money and surrender the certificate, when Powell, as receiver, appointed in supplementary proceedings on execution against Robbins, brought in a claim against the holder of the certificate to redeem. The court, following *Hyde* v. *Woods, supra,* which is cited to sustain the position, held that the certificate was property. The articles of the cotton exchange are not set out in the statement of the case or opinion, but it seems manifest, from the opinion of the court, that they differ widely from the articles of the board of trade. In the opinion it is said: "It was something more than a mere personal license or privilege, for it could pass from one to another of a certain class of persons, and belong as full to the assignee as it did to the assignor. That characteristic gave it not only value, which might attach to a bare personal privilege, but market value, which usually belongs only to things which are the subject of sale. * * * It could be transferred from hand to hand, and all the time keep its inherent value, and be as freely and fully enjoyed by the permitted purchaser as by the original owner." A certificate of membership in the board of trade can not be transferred by a member at any time or to any person he may see proper to select. Under the by-laws, a transfer can only be made to a person who may be approved by the board of directors. The board reserved the power to prevent any transfer or sale which it might think best, hence a certificate of membership could not be sold and transferred in the market from hand to hand, as seems to be authorized by the cotton exchange. If a certificate of membership on the board of trade was sub-

ject to sale and transfer by a member, at his will and pleasure, as seems, from the opinion, to be the case in the cotton exchange, we might not hesitate to hold, as did the court of appeals, that it could be reached on creditor's bill in satisfaction of a judgment. But such is not the case.

We have also been referred to several cases decided in the United States District Courts, but it will not be necessary to consider them here. Those cases are mainly predicated upon *Hyde* v. *Woods, supra,* which, as we have attempted to show, is so different in its facts from this case that it can not be regarded as an authority.

But even the decisions in the district courts have not been harmonious. In the matter of *In re Sutherland,* 6 Biss. 526, where a certificate of membership in the Board of Trade of Chicago was involved, it was expressly held not to be property. In concluding, the court said: "I am of opinion that the bankrupt's membership in this board, being in the nature of a franchise, title or privilege, does not vest in or pass to his assignee, and can not be treated as a portion of his assets."

Section 6 of the charter of the board declares: "Said corporation shall have the right to admit or expel such persons as they may see fit, in manner to be prescribed by the rules, regulations and by-laws thereof." Under this section of the charter, and the by-laws adopted under it, no person can become a member of the board except such as the board may see proper to admit. It makes no difference what may be his standing, either morally, intellectually or as a business man, he can not become a member without the consent of the board,—in other words, the board has been empowered by the legislature to determine for itself who shall be its associates. We do not understand that a court of equity, or any other court, has the right to determine who shall be a member of the board, and entitled to enjoy the rights and privileges conferred by the legislature on that body, and

yet we are asked to hold that the circuit court had the right to take from appellant his membership, and sell it in the market to another. What could be gained by a sale unless the purchaser could be invested with the right to a seat on the board? Is a court of equity created to render a decree in a case which it is powerless to enforce? We have never understood that courts of equity were organized to render decrees which could be of no practical benefit to any person, and which could not be carried out and enforced.

In *Gallager* v. *Lane*, 16 Blatchf. 410, (a case cited by appellee in support of his petition for a rehearing,) Choate, Justice, in delivering the opinion of the court, said: "In an unreported case in this district Judge Blatchford refused to make an order for the sale at auction of a seat in the stock exchange, solely, however, on the ground that he would not permit a public sale to be made, under the sanction of the court, in a case where the assignee could not undertake, with the purchaser, to deliver the thing sold." There is much wisdom in this remark. As we have seen, a purchaser, should a sale of the certificate be ordered, could acquire no right to a seat unless the board saw fit to admit such purchaser, and a court ought not to be required to render a decree that could be of no practical benefit to any person.

It is contended that the two Pennsylvania cases cited in the opinion are not authority in this case. In one of the cases (*Pancoast* v. *Gowen*, 93 Pa. St. 66,) it is said: "A seat in the board of brokers is not property subject to execution in any form. It is a mere personal privilege, perhaps more correctly a license, to buy and sell at the meetings of the board. It certainly could not be levied on or sold under a *fi. fa.* The sheriff's vendee would acquire no title which he could enforce. Nor is it within either the words or the spirit of the act of June 16, 1836, providing for attachment on judgment. Whether the proceeds of the sale of the seat in the hands of the treasurer of the board, and payable to the

defendant according to the regulations and by-laws of the board, could be thus reached, is an entirely different question. This, and no more, is what we understand to have been decided by the Supreme Court of the United States in *Hyde* v. *Woods*, 4 Otto, 525, where Mr. Justice MILLER says: 'If there had been left in the hands of the defendants any balance, after paying the debts due to the members of the board, that balance might have been recovered by the assignee in bankruptcy.' " We supposed this and the other case had a direct bearing on the question. Indeed, this case cites *Hyde* v. *Woods*, the leading case upon which petitioner relies, and shows plainly, as we think, that it has no bearing in a case like the one under consideration.

It will not, however, be necessary to discuss the question further. We are satisfied that the conclusion reached on the original hearing was correct, and the petition for a rehearing will be denied.

Mr. JUSTICE MULKEY, dissenting:

When the opinion in this case was first filed, I, with some hesitation and doubt, concurred with the majority of the court in its approval; but subsequent investigation, and a more mature consideration of the subject, fully satisfy me that the conclusion reached is not supported either by principle or authority, and I therefore respectfully dissent from it. All that there is in the charter, rules and by-laws of the board of trade, in regard to the transferability of certificates of membership, are the following rules of the board:

"*Rule 10—Memberships.*

"SEC. 1. Any person of good character and credit, and of legal age, and resident of or permanently doing business in the city of Chicago, on presenting a written application, indorsed by two members, and stating the name and business avocation of the applicant, after ten days' notice of

such application shall have been posted on the bulletin of the exchange, may be admitted to membership in the association, upon approval by at least ten (10) affirmative ballot votes of the board of directors, and upon payment of an initiation fee of $1000, or on presentation of a certificate of unimpaired or unforfeited membership, duly transferred, and by signing an agreement to abide by the rules, regulations and by-laws of the association, and all amendments that may, in due form, be made thereto.

"Sec. 2. Every member shall be entitled to receive a certificate of membership, bearing the corporate seal of the association, and the signatures of the president and secretary; and if the member in whose name said certificate stands has paid all assessments due, and has against him no outstanding unadjusted or unsettled claims or contracts held by members of the association, and said membership is not in any way impaired or forfeited, it shall, upon the payment of ten (10) dollars, be transferable upon the books of the association, to any person eligible to membership who may be approved by the board of directors, after due notice, by posting, as provided in section 1 of this rule. The membership of a deceased member shall be transferable, in like manner, by his legal representative. Prior to the transfer of any membership, application for such transfer shall be posted upon the bulletin of the exchange for at least ten days, when, if no objection is made, it shall be assumed the member has no outstanding claims against him. "

Mr. Justice Sheldon also dissents.