428   APPELLATE COURTS OF ILLINOIS.

Genslinger v. New Illinois Athletic Club, 229 Ill. App. 428.

Matchett, J., dissents.

Elizabeth Jane Genslinger, Executrix of the last will of Charles Henry Genslinger, Deceased, Appellant, v. New Illinois Athletic Club of Chicago, Appellee.

Gen. No. 27,920.

1.  LIMITATIONS OF ACTIONS—effect of death of person having right of action upon time for commencement of action by executrix. The provisions of the statute of limitations, Cahill's Ill. St. ch. 83, ¶ 20 that "if a person entitled to bring an action die before the expiration of the time limited for the commencement thereof, and the cause of action survives, an action may be commenced by his representative after the expiration of that time, and within one year from his death" do not operate to curtail the time within which the action may be commenced by the representative to one year from death regardless of the unexpired portion of the period of limitation at the date of death, but preserve to the representative all the time the decedent had and one year additional from the date of death; and where a decedent died on September 15, 1920, having a cause of action subject to a five-year period of limitation which began to run on June 24, 1919, an action commenced by his executrix on September 20, 1921, is within time.

2.  ABATEMENT AND REVIVAL—cause of action for damages for wrongful cancellation of certificates of membership in club as survivable action for conversion. A cause of action for damages for the wrongful cancellation and forfeiture of certificates of membership in a club by means of an unlawful assessment is a cause of action

for conversion of personal property within the meaning of the statute of Administrations, Cahill's Ill. St. ch. 3, ¶ 125, providing that an action for conversion of personal property shall survive the death of the person entitled to maintain such action where the declaration alleges facts which in law constitute a conversion although it is not alleged in specific terms that there was a conversion, since such certificates are property and the physical evidence of an interest having pecuniary value.

3. ABATEMENT AND REVIVAL—*what constitutes survivable action for conversion under administration statute.* The survivable action for conversion of personal property contemplated by the Administration statute, Cahill's Ill. St. ch. 3, ¶ 125, providing that an action for the conversion of personal property shall survive the death of the person entitled to bring the action, is an action of trover for the damages from the conversion and not an action for the return of such personal property, and an action in trespass on the case for damages for the conversion of certificates of membership in a nonprofit corporation from their wrongful cancellation and forfeiture by means of an unlawful assessment is an action which survives under the statute.

4. ABATEMENT AND REVIVAL—*"cause of action" for conversion survives death of person entitled to sue.* The provision of Administration Act, Cahill's Ill. St. ch. 3, ¶ 125 that an "action" for damages for the conversion of personal property shall survive the death of the person entitled to bring the action includes "causes of action" and "rights of action" and is not limited to actions actually commenced before the death of the party entitled to sue.

5. PLEADING—*sufficiency of declaration as against objection first raised on appeal.* A declaration for damages for conversion of certificates of membership in a nonprofit corporation from their wrongful cancellation and forfeiture for failure of the owner to pay an assessment levied under alleged amendments to the by-laws illegally adopted is sufficient, as against an objection first raised on appeal, that it is not alleged that the directors did not adopt the by-laws in question, where it is alleged that the assessment was levied at an annual meeting pursuant to resolution set out, that the alleged amendments, which are set out in full, were adopted at such annual meeting and at no other meeting, and that from the time of the annual meeting to the time of the wrongful cancellation and forfeiture "all of the by-laws of" the club were as therein set out, especially where the record does not show that the declaration was demurred to either generally or specially or that its sufficiency was attacked in any way in the lower court.

Appeal by plaintiff from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at

the October term, 1922.   Reversed and remanded.   Opinion filed
May 28, 1923.

FRANK L. HUME, for appellant; CHARLES S. CUTTING,
of counsel.

JOHN F. VOIGHT, GEORGE V. McINTYRE and S. E.
QUINDRY, for appellee.

MR. JUSTICE JOHNSTON delivered the opinion of the
court.

This appeal presents another phase of the litiga-
tion involved in the case of the *New Illinois Athletic
Club v. Genslinger*, 211 Ill. App. 220, in which this
court reversed a decree of the circuit court of Cook
county and remanded the case with directions that a
decree be entered in favor of Genslinger for the sum
of $23,683.52, and that the Illinois Athletic Club issue
to Genslinger 1,000 certificates of membership in the
club.   In accordance with the mandate of this court,
the circuit court entered the decree and the club is-
sued the certificates of membership to Genslinger;
but, as alleged in the declaration in the present case,
the club afterwards wrongfully canceled and forfeited
973 of the certificates.   Genslinger died September 5,
1920, and his widow, Elizabeth Jane Genslinger, was
appointed executrix of his estate.   In the present ac-
tion, which was begun September 24, 1921, Elizabeth
Jane Genslinger as executrix, appellant, seeks to re-
cover damages from appellee in the sum of $300,000
for the alleged wrongful cancellation and forfeiture
of the 973 certificates.   The action is one of trespass
on the case.   The declaration contains fourteen counts.
The substance of the declaration, briefly stated, is that
the New Illinois Athletic Club is a corporation or-
ganized not for pecuniary profit; that Genslinger was
a life member of the club, owning a life membership
certificate issued by the club; that in accordance with
the decree of the circuit court the club delivered to

Genslinger 1,000 fully paid up and transferable certificates of membership in the club; that at the time of the cancellation and forfeiture of his stock he was the owner of 973 of the 1,000 certificates; that the value of the 973 certificates was $300,000; that at the time of the cancellation and forfeiture, the club had assets in excess of its liabilities to the amount of $1,500,-000, and had 4,000 members; that at an annual meeting of its members the club passed a resolution levying an assessment on every resident and non-resident certificate of membership in the club; that the resolution recited that the assessment was made because the club would "be compelled to use funds needed for other purposes to pay" the decree for $23,683.52 which Genslinger had obtained against the club; that at the said annual meeting certain alleged amendments to the by-laws of the club were adopted levying certain annual dues against "each resident member and each owner of record of each outstanding and uncanceled resident certificate of membership" in the club; that "at the time of said meeting, and from that time up to and including the time of the cancellation and forfeiture, hereinafter mentioned, *all* of the by-laws of the" club were the following: (The by-laws are set out); that the said assessments and dues levied by the club were wrongfully levied; that in default of payment of the said dues by Genslinger, the Board of Governors on June 24, 1919, wrongfully "cancelled and forfeited his 973 certificates of membership in the club," to the damage of the plaintiff in the sum of $300,000. The declaration sets out in the fourteen counts facts which are alleged to constitute the wrongful cancellation and forfeiture of the certificates. To the declaration appellee filed pleas averring respectively that the action of appellant was not commenced within one year from the death of Genslinger, and that the cause of action did not survive the death of Genslinger. In two of the pleas the statutes on which the pleas are based

432    APPELLATE COURTS OF ILLINOIS.

Genslinger v. New Illinois Athletic Club, 229 Ill. App. 428.

are set out in full. These statutes are section 19 of chapter 83 of the Statute of Limitations [Cahill's Ill. St. ch. 83, ¶ 20], and section 123 of chapter 3 of the Statute on Administration [Cahill's Ill. St. ch. 3, ¶ 125]. The appellant demurred generally and specially to the pleas. Only the general demurrers are relied on by appellant. The demurrers were overruled, and appellant elected to stand on her demurrers. From the judgment on the demurrers appellant prayed this appeal.

The only questions presented in the present case involve the construction of the two statutes relied on by appellee. We shall consider first the questions arising on section 19. This section provides as follows:

"If a person entitled to bring an action die before the expiration of the time limited for the commencement thereof, and the cause of action survives, an action may be commenced by his representatives after the expiration of that time, and within one year from his death. If a person against whom an action may be brought die before the expiration of the time limited for the commencement thereof, and the cause of action survives, an action may be commenced against his executors or administrators after the expiration of that time, and within one year after the issuing of letters testamentary or of administration."

Genslinger died September 15, 1920. His widow, appellant, began the present action September 24, 1921, a little over a year after the death of Genslinger. Counsel for appellant contend that this action is one for "conversion"; that the cause of action accrued June 24, 1919, the date of the alleged forfeiture and cancellation of the certificates of membership; that section 15 of the Statute of Limitations [Cahill's Ill. St. ch. 83, ¶ 16] governing actions for conversion allows such actions to be brought within five years after the cause of action accrues; and that the action, having been commenced September 24, 1921, was within the five years provided by the statute. Counsel for

CHICAGO—FIRST DISTRICT—MAY, 1923.    433

Genslinger v. New Illinois Athletic Club, 229 Ill. App. 428.

appellee maintain that under section 19 the present action should have been brought within one year from the death of Genslinger; and that as it was begun more than a year after his death, it is barred by the statute.

The part of the statute in controversy is as follows:

"If a person entitled to bring an action die before the expiration of the time limited for the commencement thereof, and the cause of action survives, *an action may be commenced by his representatives after the expiration of that time, and within one year from his death.*"

The statute is ambiguous and must therefore be construed.

The part of the statute just quoted has been expressly construed by the Appellate Court of the Second District of this State in the case of *Pinkney v. Pinkney,* 61 Ill. App. 525. The remaining part of the statute relating to actions commenced *against* the executors or administrators of the decedent, which part is the same in principle as the part quoted above relating to actions commenced by representatives of the decedent, has been construed by the Supreme Court of this State in the case of *Wellman v. Miner,* 179 Ill. 326. The constructions of the two courts are not precisely the same, but both are opposed to the construction contended for by counsel for appellee. Statutes similar to the one in question have been construed by courts of other States. Some of those constructions differ from each other, but they are all contrary to the contention of counsel for appellee. In one State the Supreme Court, after construing the statute in one way, disapproved of the construction in a later decision, and announced a different construction.

Does the part of section 19 in question mean to give the representatives of the decedent the unexpired time of the decedent and one year additional, dating from his death? Or does it intend to provide

for two contingencies; that is, does it provide for a contingency where, at the time of the death, the decedent had *more* than one year remaining under the statute of limitations within which to bring the action, and also for a contingency where he had *less* than a year? Does it intend in the former event to give to the representatives the same time that the decedent had if that time is more than one year, and in the latter to give to the representatives one year even though the time the decedent had is less than a year? Or is it the intention, as counsel for appellee contend, to make a single provision prescribing the time within which the action may be brought by the representatives and to fix that time at one year? To put the contention of counsel for appellee in another way, does it mean that the action shall be brought in one year even though the decedent, had he lived, may have had more than a year within which to commence it? If the latter construction is correct, then the provision of the statute deprives the representatives of a right which the decedent possessed. Such an interpretation would seem to be wholly unreasonable. It would also be an interpretation which would not give effect and meaning to all the clauses of the part of the statute in question. According to such a reading, one clause would allow the action to be commenced by the representatives after the expiration of the time that the decedent had under the general statute of limitations, and the next clause would take away this right, and limit the time for bringing the action to one year from his death.

The part of section 19 providing for the bringing of an action *against* the executors or administrators of a person who dies within the limitation period, as heretofore stated, has been construed by the Supreme Court of this State in the case of *Wellman v. Miner,* *supra.* The court held the provision of the statute to mean that the action may be commenced after the expiration of such period plus one year after the

granting of letters testamentary. The part of section 19 construed in the case of *Wellman v. Miner, supra,* is as follows:

"If a person against whom an action may be brought die before the expiration of the time limited for the commencement thereof, and the cause of action survives, an action may be commenced against his executors or administrators after the expiration of that time, and within one year after the issuing of letters testamentary or of administration."

It will be observed that the only difference between the part of the statute construed in the case of *Wellman v. Miner, supra,* and the part in the present case is that in the former the action lies *against* the executors and administrators of the decedent and the event from which the year is estimated is the issuing of letters testamentary, while in the present case the action is *by* the representative of the decedent, and the event from which the year is estimated is the death.

In the case of *Wellman v. Miner, supra,* a bill was filed by Wellman, executor, against the widow and children of Miner for the purpose of foreclosing mortgages given to secure notes of Miner. The note in question was for $2,500. Miner died December 23, 1893. Letters testamentary were issued on his estate January 6, 1894. The statute of limitations was ten years. In their opinion the court said (pp. 331, 332, 333):

"It is claimed by appellant that the note for $2,500, dated June 1, 1866, is not barred by the statute of limitations because of a payment of $150 indorsed thereon on January 2, 1884. By this payment the note for $2,500 is claimed to have been renewed, and its binding force to have been extended to January 2, 1894. Even if there was such a payment on January 2, 1884, by Simon G. Miner as operated to take the note out of the statute of limitations, yet the renewal of the note would not be extended beyond January 2, 1894; and, inasmuch as the bill in this case was not

436    Appellate Courts of Illinois.

Genslinger v. New Illinois Athletic Club, 229 Ill. App. 428.

filed until October 13, 1894, the payment would not be sufficient as a defense. *In order to obviate this difficulty the appellant relies upon section 19 of the Limitation law of this State.* * * * The contention of the appellant is that the payment of January 2, 1884, extended the life of the note for $2,500 to January 2, 1894; that, as the bar of the statute on this note was not complete at the time of the death of Simon G. Miner, which occurred December 23, 1893, said section 19 gave the appellant one year from the appointment of an executor of the estate of Simon G. Miner to commence this suit; that, as such executor was appointed on *January 6, 1894,* appellant would have until *January 6, 1895,* to file a bill to foreclose; and that this bill, having been filed on October 13, 1894, was filed in due time. It is conceded by both parties, as has heretofore been stated, that the limitation upon the note was extended to September 1, 1893. * * * If * * * the payment made on January 2, 1884, be regarded as such a payment as amounted to a new promise to pay the debt, then the limitation was extended to January 2, 1894, and the provision of section 19, as quoted, is applicable to the present case, because Simon G. Miner died on December 23, 1893, before the expiration of the time limited for the commencement of the action, that is to say, before January 2, 1894. In that event the cause of action survived, and an action could be commenced *within a year after January 6, 1894, the date of the issuing of letters testamentary to the appellant."*

In our view, the decision in the case of *Wellman v. Miner* is conclusive, in principle, of the question involved in the present case. In that case the court construed the statute as enlarging the time within which the action may be commenced instead of curtailing it. According to the decision, the statute gave the executors and administrators, in addition to the unexpired term of the general statute of limitations, a year from the date of issuing the letters testamentary, within which to commence the action. Adopting an analogous construction of the part of

section 19 in question in the present case, we are of the opinion that the proper construction is that if a person entitled to bring an action dies before the expiration of the time limited for the commencement thereof, and the cause of action survives, his representatives, in commencing the action, are entitled to all of the time the decedent had under the general statute of limitations, and one year additional dating from his death. We are clearly of the opinion that where a person entitled to bring an action dies before the time limited for the commencement thereof, section 19 does not intend to limit the time within which his representatives may commence the action to within one year from his death. We are strengthened in this view by the decision of the Appellate Court of the Second District of this State in the case of *Pinkney v. Pinkney, supra,* in which the identical part of section 19 now under consideration was involved, and by the decision of the Supreme Court of this State in the case of *Bonham v. People,* 102 Ill. 434, which is in point, in principle.

In the case of *Pinkney v. Pinkney, supra,* an action of assumpsit was brought by the administratrix of the estate of Pinkney, Sr., against Pinkney, Jr., to recover money had and received, loaned and advanced during the lifetime of the deceased. The action was commenced over three years after the death of Pinkney, Sr. The statute of limitations was pleaded in bar of the action. The court said (p. 527):

"But the court held that if more than a year had elapsed between the taking out of the letters of administration and the commencement of the suit, the plaintiff could not recover, as shown by the following instruction: * * * This instruction entirely cut out the Behrends claim, whatever may have been the belief of the jury as to whether it was collected and the proceeds paid upon indebtedness of appellee. Section 19, ch. 83, of the Revised Statutes, was not intended to shorten the running of the statute of limitations but to lengthen it under certain circumstances.

438    APPELLATE COURTS OF ILLINOIS.

Genslinger v. New Illinois Athletic Club, 229 Ill. App. 428.

In a case where a debt due a decedent would be barred at a time within a year after his death, the section allows a suit for the debt after the time, if commenced within a year from his death. But if the debt had more than one year to run at the time of the death of the creditor before the bar, this section would not in any manner affect the running of the statute."

The Appellate Court, on the facts in the above case, was not called upon to determine the identical question involved in the case of *Wellman v. Miner, supra,* but the construction of the statute by the Appellate Court is directly contrary to the contention of counsel for appellee that under the statute an action must be brought by the representatives within a year from the death of the person entitled to bring the action. Although the decision of the Appellate Court does not, as counsel for appellee assert, constitute a rule of law, nevertheless it is a careful and deliberate expression of a court and may be considered in construing the statute.

In the case of *Bonham v. People, supra,* an action was brought upon the bond of the guardian of a minor, Laura J. Stinnett. One of the pleas filed to the declaration was as follows: "No. 10. And for a further plea, etc., because he says that said Laura J. Stinnett departed this life, to wit, on the first day of October, 1873, within the age of eighteen years, and that *this suit was not brought within one year from the time of said decease;* wherefore, etc." In considering this plea the court said (p. 440):

"The statutes of limitation relied on for the support of the tenth, eleventh and twelfth pleas, have no application where the cause of action would not be barred in the absence of those statutes, and hence have no application here."

A statute of Florida similar to section 19 has been construed by the Supreme Court of that State in the case of *Sammis v. Wightman,* 31 Fla. 10, and the court held that it was not the intention of the statute to require all actions to be commenced within a year from

the death of the person, or within a year from the issuing of the letters testamentary. The statute construed in the opinion is as follows:

"If a person entitled to bring an action die before the expiration of the time limited for the commencement thereof, and the cause of action survives, an action may be commenced by his representatives after the expiration of that time, and within six months from the issuing of letters testamentary or of administration. If a person against whom an action may be brought die before the expiration of the time limited for the commencement thereof, and the cause of action survives, an action may be commenced against his executors or administrators after the expiration of that time and within one year after the issuing of letters testamentary or of administration."

In construing the above statute the court in a careful and thorough opinion said (pp. 34-37):

"The question arising upon this section is, does it create an independent or distinct and substantive limitation upon any and all causes of action which may exist against a testator or intestate at his death, and require that action shall be brought thereon against the administrator or executor within one year from the issue of letters testamentary or of administration; and, if it does not, what is its effect? If it does, the limitation of one year applies to any and every cause of action, whatever its nature, and whether it be one for which the longest period, twenty years, or the shortest time, two years, has been prescribed. * * * Moreover, if this be true of the *second sentence* of the section, then the *same interpretation* or construction must be given to the *first sentence,* which governs the bringing of actions *by* executors and administrators. * * * We do not think this is the purpose or effect of this section. * * * The words 'time limited for the commencement thereof' mean and refer to the time prescribed elsewhere in the statute for bringing the action which may at any time be under consideration, and the words 'after the expiration of that time' not only refer to the stated time, but show that the purpose of the section was to

provide only for cases in which an action by or against a personal representative is brought *after* the period of limitation prescribed for it * * *. We are aware that a different view has been expressed in this court in the case of *Sanderson's Adm'rs v. Sanderson*, 17 Fla. 820, 850. * * * We do *not* think the general limitations of the statute *cease* to run on the death of the testator or intestate; on the contrary, *they continue to run* * * *. The term 'within one year after issuing letters of administration' is a limitation upon the words 'after the expiration of that time' in that not more than one year after the issue of letters is allowed for bringing an action where the period of limitation prescribed for the action by the other or general provisions of the statute has expired before the grant of letters, or expires within *less* than one year after such grant. * * * Where the general limitation which was running at such death does not expire within one year after such grant, the action *against* the administrator may be brought within whatever part of the period prescribed by the general limitation may remain unexpired at the time of such grant; and a *similar principle* is applicable to actions *by* executors or administrators where the general limitation which was running at the death of the testator or intestate has not expired before the grant or within six months after the grant of letters.''

It will be observed that the construction of the statute in the former case of *Sanderson's Adm'rs v. Sanderson*, 17 Fla. 820, 850, was disapproved in the case of *Sammis v. Wightman, supra.* It will also be noted that the court held in the latter case that a similar principle of construction applied to the part of the statute relating to actions *by* executors and administrators as to the part relating to actions *against* executors and administrators. We refer to this holding of the court to support our conclusion that although the part of section 19 which was construed by the Supreme Court of this State in the case of *Wellman v. Miner, supra,* related to actions against executors and administrators, nevertheless that case is control-

ling, in principle, of the present one, which is an action *by* the representatives of the decedent.

In the case of *Converse v. Johnson,* 146 Mass. 20, in construing a statute similar in principle to section 19, the court said (p. 23):

"Pub. St. ch. 197, sec. 12, cannot well be construed to mean that in every case the executor or administrator of a deceased person, who was entitled to bring an action, must bring the action within two years after the grant of letters testamentary, or of administration. The section was not intended to further limit the bringing of actions, but to extend the time within which they could be brought when the person entitled to bring them died before the expiration of the time, or within thirty days after the expiration of the time limited by other provisions of the statutes."

In *Morse v. Whitcher,* 64 N. H. 591, in construing a statute prescribing the time for the bringing of an action by an administrator, the court said (pp. 592, 593):

"The motion for a nonsuit, because the action was not brought within two years after the original grant of administration, was properly denied. Gen. Laws, ch. 198, sec. 7, providing that if any right of action existed against or in favor of the deceased at the time of his death, and survives, an action may be brought by or against the administrator at any time within two years after the original grant of administration, does not limit the time of bringing an action by an administrator upon a claim not barred by the general statute of limitations. The statute was enacted to extend the time within which suits may be brought which would otherwise be barred, and not to limit the time of bringing actions against which the general statute has not run."

In the present case Genslinger died September 15, 1921. The cause of action accrued June 24, 1919. The present action was begun September 20, 1921. On our construction of the statute, the action was commenced in time. Therefore the demurrers of

442    APPELLATE COURTS OF ILLINOIS.

Genslinger v. New Illinois Athletic Club, 229 Ill. App. 428.

appellant to appellee's pleas based on section 19 should have been sustained.

Counsel for appellant further contend that the trial court erred in holding that the cause of action in the present case was not one that *survived* within the meaning of section 123 of chapter 3 on Administration [Cahill's Ill. St. ch. 3, ¶ 125]. Section 123 is as follows:

"In addition to the actions which survive by the common law, the following shall also survive: Actions of replevin, actions to recover damages for an injury to the person (except slander and libel), actions to recover damages for an injury to real or personal property, or for the detention or conversion of personal property, and actions against officers for misfeasance, malfeasance or nonfeasance of themselves or their deputies, and all actions for fraud or deceit."

It is the contention of counsel for appellant that the present action is one for damages for the conversion of personal property and that such an action comes within the clause of the statute providing for actions to recover damages for "conversion of personal property."

Is the present action one to recover damages for the conversion of personal property? The amended declaration of appellant states that the action is one of trespass on the case. It alleges that 973 certificates of membership were wrongfully canceled and forfeited to the damage of the plaintiff in the sum of $300,000. It does not allege in terms that there was a "conversion" of the certificates, but it alleges facts which, in law, constitute a "conversion." The allegation of conversion may be general in character and without recital of evidentiary facts in the absence of a special demurrer, or it may consist of a statement of facts which constitute a conversion. 38 Cyc. 2069, 2070.

We are of the opinion that the amended declaration alleges facts which constitute a conversion; and in

our judgment the certificates of membership may be said to be personal property within the meaning of the clause of section 123 providing for the survival of actions to recover damages for the "conversion of personal property."

The authorities support the contention that the certificates are personal property for the conversion of which an action of trover will lie.

The case of *Olds v. Chicago Open Board of Trade,* 33 Ill. App. 445, is similar, in principle, to the present case. In that case Olds was a member of the Chicago Open Board of Trade. The certificate of his membership was in the possession of one Sackett. At the instance of Sackett, the Open Board canceled the certificate of Olds. After it was canceled Olds was excluded from the Open Board. In determining the question whether an action for trover would lie, the court said (pp. 448, 449):

"The declaration is very voluminous, but in effect sets out the circumstances which are a basis for a count in trover for the certificate. Then, treating the action as trover, the question is as to the measure of damages. The paper upon which the certificate was could have had only an infinitesimal value, but it was the title, or evidence of the title, of the appellant to do business on the board, and the want of it was, by the appellee, treated as the destruction of his right to do business. Both by the offer of testimony and by a proposition of law presented to the court, the appellant sought to have the value of a certificate of membership of the board, with interest, adopted by the court as the measure of damages, which being refused by the court, the appellant excepted. It is apparent that by a certificate of membership the appellant meant, and the court understood, the membership itself—the right to transact business on the board. * * * Whatever variation from this rule may be found in the reports, it has not probably been departed from in any case where the instrument converted was the evidence of the title to something withheld by the defendant from the plaintiff, as in this

case.   *   *   *   The intangible membership was not the subject of a conversion; neither is an interest in realty; but the damages for the conversion of a paper of no intrinsic value, which is the evidence of such an interest, are, as against one from whom the interest is derived, who converts the paper and denies the interest, the value of the interest itself.   The court holds that the cancellation of the certificate was a conversion of the paper on which it was, and that for that conversion the measure of damages prima facie is the value of the right of which that certificate was the evidence of title, with interest from the time of conversion to the time of trial.''

In *Barth v. Union Nat. Bank,* 67 Ill. App. 131, in which a certificate of stock was involved, the court cited the case of *Olds v. Chicago Open Board of Trade, supra,* with approval.   The court said (p. 133):

''It is said that 'the contention of the appellant now is, and his position when making the affidavit was, that the mere certificate was of purely nominal value.' If the certificate had not been taken on the writ, the appellant might have proceeded in trover, or being taken, if the replevin suit had been prosecuted unsuccessfully, and the certificate not returned, the appellee might have maintained trover.   Section 18, ch. 119, Replevin [Cahill's Ill. St. ch. 119, ¶ 18]; *Bruner v. Dyball,* 42 Ill. 34.   In either of such events the measure of damages would have been the value of the stock represented by the certificate.   *Olds v. Chicago Open Board of Trade,* 33 Ill. App. 445.''

In the case of *Lewis v. Bidwell Elec. Co.,* 141 Ill. App. 33, the court held (p. 35) that there is a conversion of stock by a corporation where it sells or declares a forfeiture of stock wrongfully; and it was further held (p. 36) that an action of trover will lie to recover damages for a wrongful conversion of stock.

In the case of *Farrell v. Bruce,* 200 Ill. App. 589, it was held that trover by an administrator will lie for the conversion of certificates of deposit.

In *Hayes v. Massachusetts Mut. Life Ins. Co.,* 125

Ill. 626, it was held that trover would lie for the wrongful conversion of certificates of stock in incorporated companies.

In *Union Stock Yard & Transit Co. v. Mallory, Son & Zimmerman Co.*, 157 Ill. 554, 563, it was held that "a conversion is any unauthorized act which deprives a man of his property, permanently or for an indefinite time."

The essence of conversion is not acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner; and, consequently, neither manucaption nor asportation are essential elements thereof. 38 Cyc. 2007, 2008.

In *Daggett v. Davis*, 53 Mich. 35, where it was held that trover will lie to recover damages for the wrongful conversion of a certificate of stock in a corporation, the court said (p. 37):

"This statement of the facts is sufficient to show that in that case there had been a conversion of the stock in the strictest sense of the term, and that the damages suffered were the value of the stock.  *  *  *  In *Neiler v. Kelley*, 69 Pa. St. 403, following *Sewall v. Lancaster Bank*, 17 Serg. & R. [Pa.] 285, it was held that trover would not lie for the shares of stock, but must be brought, as it has been in this case, for the certificate which represents the stock. But we see no reason why, if the shares are converted by means of a wrongful use of the certificate, the owner in suing may not count upon the conversion of either. The shares are the property converted, but the certificate itself is also property; standing as it does as the representative of the shares, and as its conversion may take the shares from the owner, it seems to be as proper to count upon its conversion as upon the conversion of money or any chattel."

In *Opperman v. Citizens' Bank*, 44 Ind. App. 401, the court said (p. 404): "A certificate of stock is tangible personal property, which may be recovered by an action in replevin."

Counsel for appellee cite the case of *Jones v. Barmm,*

446    Appellate Courts of Illinois.

Genslinger v. New Illinois Athletic Club, 229 Ill. App. 428.

217 Ill. 381, as authority against the contention
that the present action is one which survived the
death of Genslinger within the meaning of section 123.
In that case it was held that an action to recover dam-
ages for ''maliciously interfering by one person with
the business of another'' does not survive under sec-
tion 123 of the Administration Act, for the reason
that such an action does not involve ''personal prop-
erty'' within the meaning of section 123; that the
''damage occasioned was not to any particular piece
of tangible personal property owned by the plaintiff,
but was a damage to his business which could not
be seen with the naked eye, but could only be esti-
mated in a rough way by a money value or by loss of
trade or profit.''   The answer to the contention of
counsel for appellee is that the present action is not
brought to recover damages for ''an injury'' to per-
sonal property but to recover damages for the ''con-
version'' of personal property.   There is a difference
between the two actions.   An injury to personal prop-
erty within the meaning of section 123, according to
*Jones v. Barmm, supra,* must be some physical in-
jury.   A business cannot be physically injured be-
cause it is intangible; it cannot be the subject of a
conversion within the meaning of section 123, because,
being intangible, it is not the physical evidence of
anything of value and is not, therefore, property in
the sense of the statute.   A certificate of membership
can be physically injured within the meaning of sec-
tion 123, but the damages for such injury would be
only nominal; it can also be the subject of conversion
within the meaning of section 123, because it is the
physical evidence of something having an actual pe-
cuniary value and is, therefore, property of which the
owner may be deprived.   The conversion of the cer-
tificate is the taking of property of the owner.   The
certificates of membership in the present case, in the
sense of property, bear an analogy to a delivered
check or draft; and it has been held that such a check

or draft is property within the meaning of the term "property" as used in the statute defining the confidence game. *People v. Miller,* 278 Ill. 490, 505, 506.

Counsel for appellee assert that "certificates of membership in the club have none of the elements of personal property." They cite in support of their contention the case of *Barclay v. Smith,* 107 Ill. 349, which held that a certificate of membership in the Board of Trade of the City of Chicago was not property that is liable to be subjected to the payment of the debts of the holder by legal proceedings. The case of *Barclay v. Smith, supra,* has been reviewed and distinguished in the case of *Weaver v. Fisher,* 110 Ill. 146. In the latter case the court held, on the facts in that case, that a bill in chancery would lie to compel the surrender of a certificate of membership in the Chicago Board of Trade. In considering the case of *Barclay v. Smith, supra,* the court said (pp. 152-154):

"It is a misapprehension to suppose * * * that we held in" that case "that there are no property rights of any kind in a certificate of membership in the Board of Trade of the City of Chicago. * * * It cannot be said here that we must, from the nature of this corporation, hold there can be no pecuniary value in a certificate of membership because the proof shows the contrary with absolute certainty. It has a regular pecuniary market value, notwithstanding the conditions to which the transfer of its title is subject."

In the case of *Jones v. Fisher,* 116 Ill. 68, 72, in which a membership in the Chicago Board of Trade was under consideration, after citing with approval *Weaver v. Fisher, supra,* the court said (p. 72):

"The point is also made that the certificate is not property and it therefore has no value which the law recognizes. The fallacy of this position is directly met by the case of *Weaver v. Fisher,* 110 Ill. 146. That case expressly decides that such a certificate is property."

In *Re Page,* 107 Fed. 92, it was held that a seat in a stock exchange was property within the Bankruptcy Act. After citing *Weaver v. Fisher, supra,* with approval and distinguishing *Barclay v. Smith, supra,* the court said:

"The material inquiry before us is not whether the seat could have been attached or taken in execution, but whether it was not property which Page prior to his bankruptcy could have transferred. * * * The membership was more than a mere privilege. It was property vested in Page and transferable to any person meeting the approval of the exchange. On principle we perceive no reason why the seat of the bankrupt was not embraced in 'property which prior to the filing of the petition he could by any means have transferred.' "

In *Sparhawk v. Yerkes,* 142 U. S. 1, 12, in considering the question whether a seat in a stock exchange was property, the court said (p. 12):

"While the property is peculiar and in its nature a personal privilege, yet such value as it may possess, notwithstanding restrictions to which it is subject, is susceptible of being realized by creditors." Citing *Weaver v. Fisher, supra.*

From the above authorities it follows clearly that the certificates in the present case are property, for the conversion of which damages may be recovered in an action of trover; and therefore the present action survives within the meaning of section 123.

It is further objected by counsel for appellee that "the court would be justified in the construction that what was intended by the statute was to give an action for the *return* of property that was detained or converted and not for damages." The contention of counsel for appellee is not correct. The present action is not to recover the certificates but to recover damages for their conversion. Furthermore, the remedy for a "conversion" as used in section 123 is an action of trover, and the statute could not reasonably be construed as intending to give an action for the

"*return* of property that was detained or converted and not for damages." The statute expressly provides for an action for damages for the "conversion of personal property," and the proper action, as we have stated, is trover. "The legal wrong denominated 'conversion' is any unauthorized act of dominion or ownership exercised by one person over personal property belonging to another; and 'trover' is the technical name of the common-law action provided for the redress thereof." 38 Cyc. 2005.

Counsel for appellee further maintain that the present action does not survive under section 123 of the Administration Act, because Genslinger had not *commenced* the action before his death, and that section 123 provides for the survival of actions only that have been commenced by a person in his lifetime. Counsel for appellee argue that "there is a vast difference between actions and causes of action"; that "the term 'action' applies to a proceeding in a court * * * while a cause of action is the right to institute a judicial proceeding." Counsel further point out the fact that "the distinction is recognized in section 19 of the limitation statutes." Counsel, however, cite no authority that construes section 19 in accordance with their contention. It is true that there is a technical distinction between the terms "actions" and "causes of action," and it is also true that section 19 refers to "actions" and to "causes of action." But these terms are, nevertheless, frequently used interchangeably.

In *Kimball v. Baxter's Estate,* 27 Vt. (1 Williams) 628, in construing the word "action" used in a statute, the court said (p. 631):

"The question is, what did the legislature mean by the expression 'when one of the parties to such action has deceased?' We apprehend there can be little or no doubt, in the connection in which it is used, they had reference to the cause of action; and that the term *action* is used as an equivalent expres-

450     APPELLATE COURTS OF ILLINOIS.

Genslinger v. New Illinois Athletic Club, 229 Ill. App. 428.

sion; and in common parlance it is no uncommon thing for us to speak of the action when, in strictness, we mean the cause of action.''

In *David v. Southwestern R. Co.*, 41 Ga. 223, in determining the meaning of the word "action" used in a statute the court said (p. 224):

''It is sticking in the bark to say that nothing survives to the children but the 'action.' The 'action' is but an incident, a means of getting a right. It is the right of action that goes over to the children on the death of the mother.''

In *Frost v. Witter*, 132 Cal. 421, the court said (p. 426):

''In applying the rule, some confusion has resulted from neglect to define the terms 'cause of action' and 'action.' The  *  *  *  term 'action' is very commonly confounded with the suit (litis) in which the action is enforced. But this is not the technical meaning of the term, according to which an action is simply the right or power to enforce an obligation. 'An action is nothing else than the right or power of prosecuting in a judicial proceeding what is owed to one'—which is but to say, an obligation.''

An action is ''the legal and formal demand of one's right from another person or party, made and insisted on in a court of justice.'' Black's Law Dictionary. To the same effect is the definition in Bouvier's Law Dictionary.

In considering section 123, chapter 3 of the Administration Act, the Supreme and Appellate Courts of this State have referred to the term ''action'' used in that section as a ''cause of action.''

In the case of *Northern Trust Co. v. Palmer*, 171 Ill. 383, where section 123 was under consideration by the court (pp. 385, 387), the court, in referring to the action provided for in that section, spoke of it on page 387 as follows: ''The cause of action, being for damages for injury to personal property, survived''; and again on p. 388 the court referred to ''The cause of action surviving under the statute.''

In *Wetherell v. Chicago City Ry. Co.*, 104 Ill. App. 357, where section 123 was considered in connection with section 1 of chapter 70 [Cahill's Ill. St. ch. 70, ¶ 1], the court used the phrases "cause of action" and "right of action." The court said (p. 361):

"It has been decided that these two statutes are not repugnant. Each is in force. *Holton v. Daly*, 106 Ill. 131, 139. There is but one *cause of action*, namely, the wrongful act, neglect or default. When the injured party dies, not from or as a direct result of the injuries, the *right of action* continues in his representative for the benefit of his estate generally."

We deem it unnecessary to cite further cases on this point. The above authorities are sufficient to show that the courts of this State, like the courts of others, have used the terms "action," "causes of action" and "right of action" synonymously. We are of the opinion that the word "action" as used in section 123 means "causes of action" or "right of action" and is not limited in meaning to an action *actually commenced* in court. We have now concluded the discussion of what we conceive to be the questions which fairly arise on the construction of the two statutes involved in this case.

Although counsel for appellee have stated twice in their brief that: "There are no other issues in this case than those raised by the pleading of the two statutes referred to," yet counsel seek to question the sufficiency of the declaration. They contend that the declaration "does not allege that the *directors* did not adopt" the by-laws levying the assessment and does on each certificate; that Genslinger "had no cause of action in his lifetime and hence no cause of action survived to his executrix after his death"; "that the by-laws of appellee are not subject to collateral attack in this proceeding."

The record does not show that appellee demurred either generally or specially to the declaration. The questions involved in the present case are raised by

the special pleas of appellee. It does not appear from the record that the objections now being urged by counsel for appellee were ever made in the trial court. No cross errors are assigned on this appeal. A reviewing court does not look with favor upon an objection urged for the first time on appeal, and the declaration will be construed liberally and supported by every legal intendment. 3 Corpus Juris, pp. 786, 787. Where the objection is made for the first time on appeal, every reasonable presumption will be indulged in favor of a cause of action. 3 Cyc. 287. In *O'Rourke v. Sproul,* 241 Ill. 576, the court said (pp. 579, 580):

"Contrary to the rule where a declaration is demurred to, in the consideration of this question all intendments are to be taken in favor of the pleading. After verdict, on motion in arrest of judgment, or on appeal, everything which by fair and reasonable intendment may be inferred from the general averments of the declaration will be presumed."

In *Illinois Steel Co. v. Stonevick,* 199 Ill. 122, the court said (p. 125):

"No demurrer was filed to the declarations, attempting to point out any defect therein. After verdict, the only contention which could be made by appellant's counsel in that regard is that the declaration was so defective that it could not sustain the action."

In view of the state of the record in the present case, it must be shown that there is a total absence of an averment of some fact essential to the existence of the cause of action, or the presence of some averment that absolutely destroys plaintiff's right to recover. 3 Corpus Juris, p. 787. The objections of counsel for appellee to the declaration, therefore, can only be considered for the purpose of determining whether, if after indulging every fair and reasonable intendment in favor of the declaration, the declaration may be said to fail wholly and absolutely to state

a cause of action. In this view, we are of the opinion that the declaration is not fatally defective.

In respect to their objection that the declaration does not allege that the *directors* did not adopt the by-laws in question, counsel for appellee further maintain that the demurrers of appellant to the pleas of appellee should have been carried back to the declaration; and that in considering the declaration the allegations must be "construed most strongly against the pleader." It does not appear from the record that any motion was made by counsel for appellee in the trial court to carry the demurrers of appellant back to the declaration. In the absence of such a motion it cannot be held that the court erred "in failing to do what it was not asked to do." *Town of Scott v. Artman,* 237 Ill. 394, 399. Furthermore, we are of the opinion that the objection to the declaration is without merit. The objection is urged for the first time on this appeal, and, therefore, the declaration is not to be tested as if on demurrer, as counsel for appellee assume, but as if after verdict; and when so considered, the rule that the pleadings are construed most strongly against the pleader is reversed. *Wagner v. Chicago, R. I. & P. Ry. Co.,* 277 Ill. 114, 119; *Illinois Steel Co v. Stonevick, supra; O'Rourke v. Sproul, supra.* On the record in the present case, we should not indulge presumptions to defeat the declaration, but should endeavor to support it by every legitimate and reasonable intend-ment. The declaration alleges that at the *annual meeting of the club,* by resolution, the assessment in controversy was levied against each certificate (the resolution is set out); that at the said *annual meeting* the amendments in controversy to the by-laws were adopted levying certain annual dues on each certifi-cate. (The amendments are set out.) The declara-tion further alleges that at the time of the annual meeting, "and from that time up to and including the

time of the cancellation and forfeiture hereinafter mentioned, *all* of the by-laws of'' the club were the following: (The by-laws are then set out in full.) The declaration again avers that said alleged amendments to the by-laws were made at the *annual meeting of the club,* and at no other meeting. These allegations are sufficient to negative any presumption that the amendments to the by-laws were adopted by the *directors* of the club. If we give the averments of the declaration a liberal construction, and a fair and reasonable intendment, it cannot be presumed that the *directors* adopted *additional* by-laws which justified the cancellation and forfeiture of the certificates.

For the reasons stated, appellant's demurrers to the pleas of appellee should have been sustained, and the judgment is therefore reversed and the cause remanded for further proceedings consistent with what is said in this opinion.

*Reversed and remanded.*

McSurely, P. J., and Matchett, J., concur.